**Jorge LUIS RODRIGUEZ, Plaintiff,**

v.

**DIXIE SOUTHERN INDUSTRIAL, INC., Defendant.**

**No. CIV. 99–1974 DRD.**

United States District Court, D. Puerto Rico.

Aug. 31, 2000.

Julio E. Gil–De–La–Madrid, Calle Marginal A–11 (Granada), Bayamon, PR, for plaintiff.

Bernard H. Gentry, Clark & Campbell, PA, Lakeland, FL, Alfredo F. Ramirez–MacDonald, O'Neill & Borges, Hato Rey, PR, for defendant.

## *ORDER*

DOMINGUEZ, District Judge.

Pending before the Court is defendant's, Dixie Southern Industrial, Inc. ("Dixie"), motion to dismiss for lack of *in personam* jurisdiction, and for improper venue. *See* FED. R. CIV. P. 12(b)(2) & (3); (Docket No. 10). Plaintiff, Jorge Luis Rodriguez ("Rodriguez"), lodged an opposition thereto (Docket No. 15), and Dixie replied

(Docket No. 20). The Complaint alleges a breach of contract cause of action and seeks recovery for general, reliance and consequential damages and the enforcement of a contractual penalty clause. (Docket No. 1). Jurisdiction is based on diversity of the parties. *See* 28 U.S.C.A. § 1332.

## BACKGROUND

■ The relevant facts that follow are taken from the Complaint (Docket No. 1), except where indicated,[1] and stated in the light most favorable to the non-movant. Rodriguez, a Puerto Rican merchant, sought a manufacturer for a steel structure to be used in a parking garage. In May 1999, Rodriguez contacted Dixie by telephone, and sent via facsimile, a document as to the materials and services requested from Dixie. On May 17, 1999 Rodriguez flew to Polk City, Florida to meet with Dixie's Vice–President Michael C. Curry ("Curry") and discussed an agreement on the metal structure. The

1. Although materials outside the pleadings, *see* (Docket No. 10, Exh. A), have been utilized in reaching a decision on personal jurisdictional, the Court does not convert this Rule 12(b)(2) motion to a motion for summary judgment. *See* FED. R. CIV. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). But, nonetheless, is mindful to adhere to the First Circuit's strictures:

"On a motion to dismiss for want of *in personam* jurisdiction, Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997). In conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or

not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim. *See Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994). We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted. *See, e.g., Topp v. CompAir Inc.*, 814 F.2d 830, 836–37 (1st Cir.1987). We caution that, despite the liberality of this approach, the law does not require us struthiously to 'credit conclusory allegations or draw farfetched inferences.' *Ticketmaster–N.Y.*, 26 F.3d at 203."

*Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998); *see Ticketmaster—New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994); *see also Dynamic Image Technologies, Inc. v. United States*, 221 F.3d 34, 37–38 (1st Cir. 2000) (Consideration of extrinsic materials for jurisdictional factfinding and testing of truthfulness of the plaintiff's allegations therefor, does not convert FED.R.CIV.P. 12(b)(1) motion to that of summary judgment.) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir.1977)); *but see Rodriguez v. Fullerton Tires Corp.*, 115 F.3d at 83 (Affirming the district court's implied conversion of a Rule 12(b)(2) for want of *in personam* jurisdiction to a motion for summary judgment.).

two agreed to meet again on May 19, 1999. On May 19, 1999, Rodriguez met with Curry for a second time in Polk City and signed an Agreement. (Docket No. 10, Agreement attached as Exh. A to Curry's Attestation). Curry furnished to Rodriguez a proposal for the price of the structure totaling $144,900 and specifying that the materials would be provided FOB Dixie Southern Industrial's plant in Polk City, Florida. Rodriguez delivered to Defendant a $44,900 check as an initial partial payment for the structure. And on June 7, 1999, Rodriguez paid a transportation company $1,040 to move the three story parking garage from Polk City to Jacksonville, Florida. Plaintiff also paid another third party $14,000 to have the structure transported from Jacksonville to Puerto Rico. On June 21, 1999, Rodriguez made the final payment of $100,000 to Dixie. When the structure arrived in Puerto Rico, Rodriguez paid for storage, plus Puerto Rican taxes of 6.6% totaling for the concept $9,895.77. Finally, in Puerto Rico the Plaintiff also paid $1,500 to transport the steel structure to another location for assembly.

When the structure arrived at the job site, it was rejected by Rodriguez for not conforming to the specifications requested, nor in compliance with the American Institute for Steel Construction. On July 20, 1999, Plaintiff alleges having sent a letter indicating that the steel structure was non-conforming because the structure that Plaintiff received was not the structure Plaintiff ordered. Dixie did not reply in writing. Plaintiff also alleges, however, that Dixie through Michael C. Curry called Plaintiff and informed him that the situation would not be remedied. Rodriguez now seeks the return of all moneys paid for the structure and transporting the structure, as well as the enforcement of a penalty clause in the contract with Dixie

and consequential damages because of the loss of credibility.[2]

On the other hand, Defendant is requesting dismissal of this case for lack of personal jurisdiction. (Docket No. 10; Motion to Dismiss). Dixie maintains that it is a corporation with its principal place of business in Polk City, Florida. Furthermore, Dixie avers that Rodriguez contacted Defendant and flew to Florida to request services and materials. Dixie contends that it did not transact business within the meaning of Puerto Rico's long arm statute. Additionally, Dixie alleges that it does not own any property in Puerto Rico, does not maintain an office in Puerto Rico, is not licensed to do business in Puerto Rico, does not maintain any systematic, continuous, or substantial contacts with Puerto Rico and has not sent officers, agents or employees to Puerto Rico in connection with this matter. Defendant's only contact with Puerto Rico relating to this matter are: (1) "On or about May 25, 1999, Dixie sent, via overnight delivery, the detailed drawings of the materials that was (sic) to be provided to Rodriguez under the Agreement for Rodriguez's approval. The documents were sent by Dixie to Rodriguez in Puerto Rico"; and (2) "On or about June 4, 1999, I telephoned Rodriguez in Puerto Rico to determine if the detailed drawings were satisfactory under the Agreement. Rodriguez verbally approved the detailed drawings and directed Dixie to provide the services and materials in accordance with the detailed drawings." (Docket No. 10; Curry's Attestation ¶¶ 6 & 7).

Concisely, Dixie argues that there are insufficient minimum contacts between their conduct and Puerto Rico to establish personal jurisdiction. Defendants also argue that venue is improper in this Court. Rodriguez contests these arguments. For

---

**2.** The Court notes, however, under Puerto Rico law the penalty clause bars a claim for consequential damages. *See* P.R. LAWS ANN. tit. 31, § 3131 (1930); *Jack's Beach Resort, Inc. v. Puerto Rico Tourism Dev. Co.,* 112 P.R. Offic. Trans. 430, 436–441 (1982); *Demas v. Builders Ins. Co.,* 109 P.R. Offic. Trans. 1037, 1049 (1980).

the reasons set forth below, Dixie's motion to dismiss is **DENIED**.

## DISCUSSION

In order for a court to be able to make a binding decision which conforms with due process, the court must have personal jurisdiction over each party to the case. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir.1999). The plaintiff has the burden of establishing that the forum court has personal jurisdiction over the defendant. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997). Because this case is in the early stages of litigation and no evidentiary hearing has been held the Court employs the prima facie standard (as alluded to at Note 1, infra) to determine whether the plaintiff has met his burden.[3] *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d at 83–84; *Mohajer v. Monique Fashions*, 945 F.Supp. 23, 26 (D.P.R.1996). Under this least taxing of the standards, a plaintiff must make a showing as to each fact required to satisfy both the local forum's

long-arm statute and the Constitution's due process clause. *See id.* The district court does not sit as a factfinder; rather, "it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.* at 84. To make a prima facie showing, the plaintiff may not rest on unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d at 145; *Boit v. Gar–Tec Products, Inc.*, 967 F.2d at 675.

The Court pauses momentarily to interject that of the two varieties of *in personam* jurisdiction, general and specific, the only avenue available to Plaintiff is specific jurisdiction over Dixie.[4]

For this Court to obtain specific *in personam* jurisdiction over Dixie, Rodriguez must satisfy two requirements: (1) "[Puerto Rico] has a long-arm statute that purports to grant jurisdiction over [Dixie]; and [ (2) ] the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Pritzker v. Yari*, 42 F.3d at 60; *see Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d

---

**3.** In ruling on this issue, the court has a number of different standards by which it may review the record to determine whether the plaintiff has met its burden. *See Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 674–78 (1st Cir.1992). When a court holds an evidentiary hearing on the issue, one of two standards applies: either plaintiff must demonstrate a likelihood of the existence of all facts necessary to establish personal jurisdiction or plaintiff must show by a preponderance of the evidence the facts which support personal jurisdiction. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145–47 (1st Cir.1995); *Mohajer v. Monique Fashions*, 945 F.Supp. 23, 26 (D.P.R.1996). A third method often used at the early stages of litigation is the prima facie standard. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d at 83–84. In the present case, no party has requested an evidentiary hearing and the litigation is in its early stages. Moreover, the First Circuit has ruled that unless the district court otherwise informs the parties, it is to be understood that the prima facie standard will be used. *See Rodriguez v. Fullerton Tires*

*Corp.*, 115 F.3d at 84. Accordingly, the Court will employ the prima facie standard in ruling on the motion to dismiss.

**4.** Defendant has had sporadic contacts with Puerto Rico consisting of two other contracts with Puerto Rican businesses over a period of ten years and Curry has come to Puerto Rico once in connection with one of the two contracts. (Docket No. 10; Curry's Attestation). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994)(quoting *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992)); *see Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir.1999). "Nothing in the record before [the undersigned] suggests that [Dixie] engaged in Puerto Rico in continuous and systematic activity." *Pritzker v. Yari*, 42 F.3d at 60.

at 144. With regard to this first condition, Puerto Rico's long-arm statute, *see* P.R. LAWS ANN. tit. 32, app. III, R.4.7(a)(1) & (2) (1983), extends personal jurisdiction as far as the United States Constitution will permit. *See Pritzker v. Yari,* 42 F.3d at 60; *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986). Accordingly, when the second condition is met implicitly the first condition is fulfilled (the Court has personal jurisdiction) and conversely, when the second condition fails the entire analysis grinds to an abrupt halt (the Court is without personal jurisdiction). Thus, the Court's analysis focuses on a determination of whether exercise of jurisdiction over Dixie is Constitutionally permissible (i.e., the second requirement). *See Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995); *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d at 12; *see also Phillips Exeter Academy v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 287 (1st Cir.1999) (Approving of district court's focusing on federal constitutional standards when state long-arm statute reached to full extent allowed under the Constitution).

■■■ The second condition—that the court's exercise of personal jurisdiction comports with constitutional strictures—requires a substantial justice analysis. The Due Process clause of the Fourteenth Amendment establishes the "fair play and substantial justice" standard to be followed. *See Helicopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. at 1871. "Fair play and substantial justice" in the area of *in personam* personal jurisdiction has been interpreted to mean that "minimum contacts" have to be established between nonresident and forum. *Burger King,* 471 U.S. at 462, 105 S.Ct. at 2185–86.

"The inquiry into specific jurisdiction lends itself to a tripartite analysis. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 35 (1st Cir.1998); *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994). First, an inquiring court must ask whether the claim that under-

girds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction. *See United Elec. Workers,* 960 F.2d at 1088 (discussing this aspect of the inquiry and dubbing these factors the "Gestalt factors"). An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999); *see Pritzker v. Yari,* 42 F.3d at 60–1. This test of a defendant's minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Id.* at 60. The first two parts of the test—relatedness and purposeful availment—are both aspects of demonstrating minimum contacts pursuant to *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 713 (1st Cir.1996).

### A. Relatedness

■■■ "In order for the extension of personal jurisdiction to survive constitutional scrutiny, a claim must 'arise out of, or be related to, the defendant's in-forum activities.'" *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d at 35 (citing *Ticketmaster—New York, Inc. v. Alioto,* 26 F.3d at 206). The relatedness test focuses on the nexus between the defendant's contact with the forum and the plaintiff's cause of action. *See id.* at 714; *Sawtelle v. Farrell,* 70 F.3d at 1389. This test ensures that the causation element is in the forefront of the court's due process analysis. *See Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d

201, 207 (1st Cir.1994). The court must determine whether plaintiff's claim arises out of or is related to the defendant's conduct within the forum state. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d at 36. The claim may not arise out of the general relationship between plaintiff and defendant; rather, the cause of action " 'must directly arise out of the specific contacts between the defendant and the forum state.' " *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d at 290 (quoting *Sawtelle v. Farrell*, 70 F.3d at 1389). In a contract claim, as is the case at bar, the court should analyze the elements of the cause of action and determine "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d at 289; *see Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 35. For a tort claim, there should be a general showing that defendant's contacts with the forum were a proximate cause of plaintiff's claim. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 35; *Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 715. In the case of a business relationship that leads to a tort, the absence of proximate cause will not necessarily mean that specific jurisdiction is lacking. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 715. When an out-of-state party engages in conduct targeted at an in-state resident to promote a business relationship between the two sides, specific jurisdiction may be proper if the out-of-state party's conduct leads to a tortious result. *See id.*

In the present case, Rodriguez' complaint is for breach of contract. "[I]f a contract claim, our stereotypical inquiry tends to ask whether the defendant's forum-based activities are 'instrumental in the formation of the contract.' " *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 35 (citing *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir.1983)). The question thus is whether Defendant's conduct in Puerto Rico was instrumental in the formation or breach of the parties' contract. *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d at 289. The record contains evidence that Defendants were in communication between Florida and Rodriguez in Puerto Rico regarding their business relationship. Forum-state contacts do not have to include actual physical presence in order for them to be constitutionally significant. *See id.* at 289–90. The sending of information into the forum state via telephone or mail constitutes evidence of a jurisdictional contact directed into the forum. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 36. Here, the Defendant readily states that "[o]n or about May 25, 1999, Dixie sent, via overnight delivery, the detailed drawings of the materials that was (sic) to be provided to Rodriguez under the Agreement for Rodriguez's approval. The documents were sent by Dixie to Rodriguez in Puerto Rico." (Docket No. 10; Curry's Attestation ¶ 6). Further, "[o]n or about June 4, 1999, [Curry] telephoned Rodriguez in Puerto Rico to determine if the detailed drawings were satisfactory under the Agreement. Rodriguez verbally approved the detailed drawings and directed Dixie to provide the services and materials in accordance with the detailed drawings." (Docket No. 10; Curry's Attestation ¶ 7).

Defendant, acknowledges that "negotiation and consummation of a business transaction by mail has been found to be enough 'minimum contacts' to establish long arm jurisdiction over defendant." (Docket No. 10; Memorandum of Law p. 12) (citing *Integrated Indus., Inc. v. Continental Milling Co.*, 385 F.Supp. 883, 886 (D.P.R.1974)). The initial payment for the structure was tendered on May 19, 1999. The detailed drawings of the materials were sent by mail on May 25, 1999 to Rodriguez in Puerto Rico for approval. The approval of the drawings was an integral part of the contract between the par-

ties. The totality of this evidence indicates that Dixie took affirmative steps in Puerto Rico directed towards the formation of the contractual relationship between Dixie and Rodriguez. It follows, that Dixie's Puerto Rico based activities were instrumental in the formation or breach of the parties' contract. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 35; *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d at 289. Accordingly, the relatedness test is satisfied with regard to Rodriguez' breach of contract claim. *See Pritzker v. Yari*, 42 F.3d at 61; *Goldman, Antonetti v. Medfit Int'l, Inc.*, 982 F.2d 686, 690–91 (1st Cir. 1993).

### B. Purposeful Availment

 The second part of the test for specific jurisdiction is whether the defendant's in-state contacts constitute a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that forum's laws and making the defendant's involuntary presence before the courts there foreseeable. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 36; *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d at 1089. The purposeful availment prong is meant to ensure that personal jurisdiction is not based only upon a defendant's random or isolated contacts with the forum. *See Sawtelle v. Farrell*, 70 F.3d at 1391. The court's exercise of jurisdiction must be "fair, just, or reasonable." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 716 (quotations omitted). The Court should focus on voluntariness and foreseeability. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 716. The defendant's contacts with the forum should be voluntary and not based on the unilateral actions of a third party. *See id.* Additionally, the nature of these contacts must be such that the defendant could reasonably anticipate the possibility of being subject to a lawsuit there. *See id.* Foreseeability, in turn, requires that

a defendant's contacts in the forum be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). As the Supreme Court made clear

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (citing *International Shoe*, 326 U.S. at 319, 66 S.Ct. 154.). "[R]andom, isolated, or fortuitous" contacts with the forum will not suffice. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

 Rodriguez had to establish a prima facie case showing that Dixie availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240. The Court recognizes that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *see Pritzker v. Yari*, 42 F.3d at 61. "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444

U.S. at 297–298, 100 S.Ct. at 567 (citing *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961)).

 In the instant case, in addition to the facts stated above which demonstrate that a substantial portion of the contract formation/breach occurred in Puerto Rico, the Court holds that the evidence on the record demonstrates that Dixie had more than a mere "expectation" it had actual knowledge its products would be purchased by Rodriguez and brought to Puerto Rico.[5] Thus, this suit is based on a contract with a substantial connection to Puerto Rico and the Defendant knew its product was bound for the Puerto Rico forum. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297–298, 100 S.Ct. at 567; *McGee v. International Life Ins. Co.*, 355 U.S. at 223, 78 S.Ct. at 201; *Pritzker v. Yari*, 42 F.3d at 61. Moreover, it is appropriate to exercise jurisdiction over a defendant that has purposefully derived economic benefits from the forum. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 717.

### C. Gestalt Factors

 Even if Rodriguez were able to show relatedness and purposeful availment (commonly referred to as "minimum contacts"), the Court must apply the "gestalt factors" to the facts of this case, consider the totality of the circumstances, and ascertain whether the exercise of *in personam* jurisdiction over Dixie would be unreasonable. *See Ticketmaster—New York, Inc. v. Alioto*, 26 F.3d at 209–212.

"The Supreme Court has identified five such factors, namely, (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."

*Id.* at 209 (citing *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184); *see United Elec. Workers v. 163 Pleasant Street*, 960 F.2d at 1088. These factors serve to assist the court in achieving substantial justice. *See id.* In a close case, these factors may tip the constitutional balance of the court's analysis. *See id.*

 The first factor—the burden on the defendant to appear in the forum—permits the court to prevent harassing litigation. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 718. It will almost always be burdensome for a defendant to defend itself in a foreign jurisdiction. *See Pritzker v. Yari*, 42 F.3d at 64. In order for this factor to weigh against the court's jurisdiction, therefore, it must be shown that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* In the case before the Court, it will be burdensome and inconvenient for Defendants to defend this case in Puerto Rico. The Court notes, however, that it would be burdensome and inconvenient for *any other* defendant based outside of Puerto Rico to defend a suit in this forum. Defendants have not demonstrated any unique or special circumstances to show that the burden on them to appear in Puerto Rico would be constitutionally significant. Additionally, there is no evidence to indicate that this lawsuit was instigated to harass Defendants. Accordingly, this factor weighs in favor of the court's exercise of jurisdiction.

 The second factor examines the forum's interest in adjudicating the

---

5. Defendant's two contracts with other Puerto Rican businesses over a period of ten years are sporadic. However, much like "continuous and systematic" contacts for general jurisdiction, an "ongoing relationship" by the non-resident with the a resident of the forum would show "purposeful availment" by the non-resident and would aid in establishing specific jurisdiction. *See Brock Supply Co. v. Moulding Assocs., Inc.*, 81 F.Supp.2d 338, 344 (D.P.R.2000).

dispute. *See United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d at 1088. The purpose of this factor is not to compare the forum's interest with that of another jurisdiction, but to measure the extent to which the forum has an interest at all. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 718; *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d at 151. A forum state has a demonstrable interest in exercising jurisdiction over a defendant who has caused an injury within the state. *See Sawtelle v. Farrell*, 70 F.3d at 1395. In the case before the Court, a substantial portion of the alleged breach of contract acts occurred outside of Puerto Rico. The effects of the acts, however, were felt by Rodriguez in Puerto Rico. Therefore, Puerto Rico has an interest in exercising jurisdiction over Defendants.

The third gestalt factor is the plaintiff's interest in obtaining effective and convenient relief. *See United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d at 1088. The plaintiff's choice of a forum should be given a large degree of deference with regard to the issue of his own convenience. *See Sawtelle v. Farrell*, 70 F.3d at 1395. In the case before the Court, Rodriguez is a Puerto Rico citizen and has chosen to litigate his claim here. It would certainly be more convenient for Rodriguez to litigate in Puerto Rico. Thus, this factor weighs in favor of the Court's exercising specific jurisdiction.

The fourth factor is the judicial system's interest in obtaining the most efficient resolution of the controversy. *See United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d at 1088. Preventing piecemeal litigation could favor one forum over another on this factor. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d at 718. Defendant does not expressly discuss this issue in the motion to dismiss. Regardless, the Court recognizes that there are

surely necessary witnesses in both Florida and Puerto Rico. Thus, the Court holds that this factor favors neither party. *See Sawtelle v. Farrell*, 70 F.3d at 1395.

The final gestalt factor is the common interests of all involved sovereigns in promoting substantive social policies. *See United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d at 1088. A prominent policy consideration for this factor is the state's ability to provide its residents with a convenient forum to redress injuries caused by foreign actors. *See Sawtelle v. Farrell*, 70 F.3d at 1395.

In the case before the Court, Puerto Rico has a policy interest in affording Rodriguez with a forum to bring its contractual law claims against Defendant. Defendant has neglected to present a policy interest that Florida might have in having this dispute resolved there. Nevertheless, the Court believes justice requires that the Court recognize that, given the substantial portion of the contract having been formed in Florida, Florida has an equally potent policy interest in providing Dixie with a convenient forum for redress.[6] Therefore, this proverbial clash of the titans ends in a deadlock favoring neither party.

In conclusion, the first three of the gestalt factors favor this Court's exercising specific jurisdiction over Defendant. The fourth and fifth factors favor neither side. As a whole, the gestalt factors weigh in favor of having this Court exercise jurisdiction over Defendants.

Succinctly, Plaintiff has met the required prima facie burden to establish specific *in personam* jurisdiction over nonresident Dixie. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d at 34; *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d at 83–84. That is, Rodriguez has shown relatedness, pur-

---

**6.** Although the parties at this early stage of litigation have not broached the subject, the Court acknowledges that a conflict of law and dominant contacts issue looms in the back-

ground. *See e.g. A.M. Capens Co. v. American Trading & Prod. Corp.*, 892 F.Supp. 36, 40–41 (D.P.R.1995), *affirmed*, 74 F.3d 317, 320–323 (1st Cir.1996).

poseful availment, and that exercise of jurisdiction over Dixie would be reasonable. *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d at 288; *see Pritzker v. Yari*, 42 F.3d at 60–1.

### D. Improper Venue

■ Under 28 U.S.C.A. § 1391, a corporation is deemed to be a resident of any district in which it is subject to personal jurisdiction. *See* 28 U.S.C.A. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). Thus, venue is proper over a corporation in any district where it is also subject to that state's personal jurisdiction. *See* 28 U.S.C.A. § 1391(a) ("A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."); *GTE New Media Services, Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 39–40 (D.D.C.1998). Because the Court found above that Dixie was subject to personal jurisdiction in Puerto Rico, Defendants' argument is clearly unpersuasive.

Wherefore, Defendant's motion to dismiss (Docket No. 10) is **DENIED.** Defendant shall file an answer to the complaint by **September 21, 2000.**

**IT IS SO ORDERED.**