**TRIO REALTY, INC. Plaintiff**

v.

**ELDORADO HOMES, INC., et al. Defendants**

**No. CIV. 01–2718(SEC).**

United States District Court, D. Puerto Rico.

Dec. 15, 2004.

---

Cinthya M. González, San Juan, PR, Julio E. Gil De–La–Madrid, Esq., Reparto Alhambra, Bayamón, PR, for Plaintiffs.

Andres Guillemard–Noble, Nachman & Guillemard, San Juan, PR, for Eldorado Homes, Inc., defendant.

Enrique A. Mier–Romeu, Mariano A. Mier–Romeu, Fiddler, González & Rodriguez, San Juan, PR, for Stephen F. Baker, Jody McClanahan, defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court are Defendants' Motions to Dismiss for lack of *in personam* jurisdiction [1] (Dockets ## 17 & 22). Plaintiff has opposed Defendants' motions (Docket # 23) and Defendants have replied (Dockets ## 28 & 29). Upon careful review of the parties' filings and the applicable law, we find that Co-defendants Baker's and McClanahan's motion to dismiss must be **GRANTED**, that Co-defendants Eldorado Homes, Inc.'s (herein,

---

[1] Co-defendants Stephen F. Baker and Jody McClanahan filed a Motion to Dismiss for lack of *in personam* jurisdiction on September 20, 2002 (Docket # 17). Co-defendants Eldorado Homes, Inc., Chitram (Blue) Sewnarine and Jana Sewnarine filed a separate Motion to Dismiss for lack of *in personam* jurisdiction on October 18, 2002 (Docket # 22). On March 30, 2004, in the interest of judicial economy, the Court consolidated both motions and informed the parties that the two motions would be addressed jointly (*Docket # 32*).

"Eldorado"), Chitram (Blue) Sewnarine's and Jana Sewnarine's motion to dismiss must be **GRANTED in part and DENIED in part.**

## Standard of Review

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (*quoting Internat'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Therefore, in order for a court to be able to make a binding decision, the court must have personal jurisdiction over each party to the case. *Rodríguez v. Dixie Southern Industrial, Inc.,* 113 F.Supp.2d 242, 249 (D.P.R. 2000) (*citing United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30, 35 (1st Cir.1999)). The plaintiff has the burden of proof in establishing that the court has personal jurisdiction over the defendant. *Id.* (*citing Mass. Sch. of Law at Andover v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998); *Rodríguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997)). The court then "draws the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994). However, the court does not credit conclusory allegations or draw farfetched inferences. *Id.*

At the early stages of litigation and having held no previous evidentiary hearing, the court typically applies a *prima facie* standard. *Rodríguez,* 115 F.3d at 83–84. Moreover, the First Circuit has ruled that unless the district court otherwise informs the parties, it is to be understood that the *prima facie* standard will be used. *Id.* Accordingly, this Court will employ the *prima facie* standard in its ruling.

"To make a *prima facie* showing, the plaintiff may not rest on unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction." *Rodríguez,* 113 F.Supp.2d at 249 (*citing Foster–Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 145 (1st Cir.1995); *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir. 1992)). The district court does not sit as a fact finder; rather, "it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.* (*quoting Rodríguez,* 115 F.3d at 84).

There are two types of personal jurisdiction: general and specific. *Mass. Sch. of Law,* 142 F.3d at 34; *Pritzker v. Yari,* 42 F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in systematic and continuous activity in said forum. *Foster–Miller,* 46 F.3d at 144 (*citing United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)). Since Plaintiff in this case has argued only the existence of this Court's specific jurisdiction over Defendants, the Court will proceed to discuss and apply only the specific jurisdiction analysis.

Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec. Workers,* 960 F.2d at 1088–89. In diversity jurisdiction cases, it requires a plaintiff to establish two conditions: first, that the forum has a long-arm statute which purports to grant jurisdiction over the defendant; and second, that the court's exercise of personal juris-

diction over the defendant pursuant to that statute would comport with the Constitution's strictures. *Foster–Miller,* 46 F.3d at 144; *Pritzker,* 42 F.3d at 60. With regard to the first condition, the First Circuit Court has consistently held and reaffirmed that the Puerto Rico's long-arm statute "extends personal jurisdiction as far as the Federal Constitution permits." *Pritzker,* 42 F.3d at 60. *See e.g., Dalmáu–Rodríguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986). Accordingly, when the state long-arm statute is coextensive with the U.S. Constitution's due process limits, the court's analysis may focus solely on the federal constitutional analysis. *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995); *Dalmáu Rodríguez,* 781 F.2d at 12; *see Phillips Exeter Acad. v. Howard Phillips Fund,* 196 F.3d 284, 287 (1st Cir.1999) (approving of the district court's focus on federal constitutional standards when state long-arm statute reached to the full extent allowed under the Constitution). Thus, this Court's analysis will focus on whether exercise of jurisdiction over Defendants is constitutionally permissible.

■ In accordance with First Circuit Court jurisprudence, a court making a determination on the second condition, that the court's exercise of personal jurisdiction comports with constitutional strictures, should embark on a tripartite inquiry as to defendant's contacts with the forum state: relatedness, purposeful availment and reasonableness. *Sawtelle,* 70 F.3d at 1389. First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities (the "relatedness test"). *Pritzker,* 42 F.3d at 60–61 (*citing United Elec. Workers,* 960 F.2d at 1089). Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable (the "purposeful availment test"). *Id.* Third, the exercise of jurisdiction must be reasonable or comport with traditional notions of "fair play and substantial justice." *Id.; Nowak v. Tak How Inves., Ltd.,* 94 F.3d 708, 717 (1st Cir.1996) (*citing Internat'l Shoe Co.,* 326 U.S. at 320, 66 S.Ct. 154). The latter is also commonly referred to as the gestalt factors by the First Circuit Court (the "reasonableness test").

■ This tripartite analysis must be made on a case-by-case basis. *Pritzker,* 42 F.3d at 60. There must be an affirmative finding on each of the three parts of the test in order to support a finding that specific jurisdiction exists. *Phillips Exeter,* 196 F.3d at 288. Additionally, the court should apply this test individually to each of the plaintiff's claims. *Id.* at 289.

The first two parts of the tripartite inquiry—relatedness and purposeful availment—are both aspects of demonstrating "minimum contacts" pursuant to *International Shoe Co.,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. *See Nowak,* 94 F.3d at 713. The relatedness test focuses on the nexus between the defendant's contact with the forum and the plaintiff's cause of action. *Id.* at 714; *Sawtelle,* 70 F.3d at 1389. The court must determine whether plaintiff's claim arises out of or is related to the defendant's conduct within the forum state. *Swiss Am.,* 191 F.3d at 36. Hence, the claim may not arise out of the general relationship between the plaintiff and the defendant. *Phillips Exeter,* 196 F.3d at 290. More specifically, in a breach of contract claim, such as in the case at bar, the court must look at the elements of the cause of action in order to determine "whether the defendant's contacts with the forum were instrumental either in the for-

mation of the contract or in its breach." *Id.* at 289. The First Circuit has applied this same test when the alleged tort is an intentional interference with a contractual or business relationship. *Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd.,* 298 F.3d 1, 11 (1st Cir.2002).

■ The purposeful availment test focuses on whether the defendants availed themselves of the privileges of conducting activities in the forum state. The First Circuit has identified two cornerstones in order to determine whether the defendants' contacts with the forum state meet the purposeful availment standard: foreseeability and voluntariness. *Ticketmaster–New York,* 26 F.3d at 207; *Sawtelle,* 70 F.3d at 1391.

■ The third part of the tripartite inquiry entails the analysis of the reasonableness standard or gestalt factors. These factors "bear upon the fairness of subjecting [nonresidents] to the authority of a foreign tribunal." *Sawtelle,* 70 F.3d at 1394 (*quoting United Elec. Workers,* 960 F.2d at 1088). The five (5) factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Id.* (*citing Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). Finally, the First Circuit has held that the reasonableness standard analysis "evokes a sliding scale" where the weaker plaintiff's showings on the reasonableness and purposeful availment standards, the less a defendant needs to show in terms of reasonableness in order to defeat jurisdiction, and vice versa. *Id.* (*quoting Ticketmaster–New York,* 26 F.3d at 210).

**Factual Background**

Plaintiff Trio Realty, Inc. is a real estate company in Puerto Rico (Docket # 1, ¶ 1). Co-defendant Eldorado is a company in the business of constructing residential homes in Kissimee, Florida (Docket # 1, ¶ 2). Eldorado is solely owned by its President, Co-defendant Chitram Sewnarine (Docket # 22, Exhibit A ¶ 5). Co-defendant Jana Sewnarine is the wife of Co-defendant Chitram Sewnarine (Docket # 22, Exhibit B ¶ 1). Co-defendant Stephen F. Baker was Eldorado's attorney and assisted in several transactions for the purchase by Puerto Rico clients of certain Florida homes built by Eldorado (Docket # 17, Exhibit A ¶ 8). Co-defendant Jodi McClanahan is Co-defendant Baker's legal secretary (Docket # 17, Exhibit B ¶ 7).

Plaintiff has filed suit against Defendants for allegedly breaching a contract in which Co-defendant Eldorado agreed to pay Plaintiff a 10% commission of the sale price for every Florida home built by Eldorado and purchased by those Puerto Rico clients procured by Plaintiff (Docket # 1, ¶¶ 10–13). Allegedly, Co-defendant Eldorado has refused to pay the previously stipulated 10% commission owed to Plaintiff after the closing of said sales. (Docket # 1, ¶¶ 17–19).

Defendants have filed two separate motions requesting dismissal for lack of personal jurisdiction. Plaintiff has opposed said motions averring that this Court has personal jurisdiction over all Defendants. Generally, Plaintiff supports his claim of personal jurisdiction by relying on the existence of the alleged joint venture agreement between Eldorado and Plaintiff, one visit to Puerto Rico by Co-defendant Chitram Sewnarine, the multiple telephone calls and U.P.S. package mailings made to Puerto Rico by Defendants and the economic benefits derived by Co-defendant Eldorado for the sale of thirty-two (32)

Florida homes to the Puerto Rico clients procured by Plaintiff. *See* Docket # 23, ¶ 2. We will proceed to analyze this Court's personal jurisdiction over each Co-defendant in logical order.

## Applicable Law and Analysis

### 1. Co-defendants Baker and McClanahan

 In order to prove his *prima facie* case of personal jurisdiction over Co-defendants Baker and McClanahan, Plaintiff alleges that Co-defendants Baker and McClanahan were "inherently involved or engaged in actions and/or practices relating to the payment and/or disbursement of Trio Realty's 10% commission." (Docket # 1, ¶ 15 & Docket # 23, ¶ 2(n)). Additionally, Plaintiff avers that Co-defendants Baker and McClanahan "were agents, employees, representatives and/or contractors of Eldorado" directly involved in the transactions leading up to the execution of the purchase deeds of the Eldorado Florida homes (Docket # 1, ¶¶ 16–17 & Docket # 23, ¶¶ 2(m, o)). It is also averred that Eldorado's refusal to pay Plaintiff's 10% commission "was initiated, spurred, instigated or perpetuated by the actions and/or omissions" of Co-defendants Baker and McClanahan (Docket # 1, ¶ 19). Furthermore, Plaintiff has provided evidence as to two-hundred and twelve (212) calls made by Co-defendants Baker and McClanahan to Puerto Rico and thirty (30) U.P.S. packages mailed by them to different addresses in Puerto Rico. *See* Docket # 23, Exhibit 3.

Notwithstanding the foregoing, Plaintiff has not disputed the fact that Co-defendants Baker and McClanahan were never parties to the alleged joint venture agreement (Docket # 17, pp. 3–4). Additionally, it remains undisputed that the extent of Co-defendant Baker's connection with the instant case is limited to him being Eldorado's attorney in the Florida home purchase transactions and Ms. McClanahan's sole connection is her position as Co-defendant Baker's legal secretary (Docket # 17, pp. 3–4). It is further undisputed that Co-defendants Baker's and McClanahan's contacts with Puerto Rico (i.e., the telephone calls and U.P.S. mailings to the island) were incidental to the professional services provided to Eldorado in the sale of the Florida homes to the Puerto Rico clients (Docket # 28, p. 7).

"In order to defeat a motion to dismiss for want of personal jurisdiction, a plaintiff must verify the facts alleged through materials of evidentiary quality" and mere allegations in a legal memorandum are insufficient "even under the relatively relaxed prima facie standard, to establish jurisdictional facts." *Barrett v. Lombardi,* 239 F.3d 23, 27 (1st Cir.2001) (citations omitted). After examining the record, we find that Plaintiff's allegations against Co-defendants Baker and McClanahan amount to nothing more than conclusory allegations and that some are even contrary to the evidence in the record. In this case, evidence of telephone calls and mailings of U.P.S. packages does not, by itself, demonstrate sufficient contacts with Puerto Rico to warrant this Court's personal jurisdiction over Co-defendants Baker and McClanahan. *See Sawtelle,* 70 F.3d at 1390 (holding that the communications sent into New Hampshire, by way of telephone and mail, were ancillary to the allegedly negligent non-forum activities.). Therefore, we find that, even with the broadest interpretation, Plaintiff's claims do not amount to a *prima facie* case of personal jurisdiction as to Co-defendants Baker and McClanahan. We explain by applying the First Circuit Court's personal jurisdiction tripartite inquiry.

First, in terms of relatedness, because this is a breach of contract claim, the Court must look at whether Co-defendants Baker's and McClanahan's contacts with

Puerto Rico were instrumental in the formation or breach of the joint venture agreement between Plaintiff and Eldorado.[2] In the case at bar, Plaintiff merely alleges, without making any reference to evidence in the record, that Co-defendants Baker and McClanahan were directly involved in the pay off of their 10% commission and that they "instigated" Eldorado's breach of the joint venture agreement. However, Plaintiff has failed to demonstrate that Co-defendants' contact with the forum, to wit the 212 telephone calls and the mailing of 30 U.P.S. packages, were in any way instrumental or directly related to Eldorado's alleged breach of its contract. Although this District Court has held that sending information into the forum state via telephone or mail constitutes evidence of a jurisdiction contact directed into the forum, the relatedness requirement is met only when the plaintiff's cause of action arises directly out of the specific contacts between the defendant and the forum state. *Rodríguez*, 113 F.Supp.2d at 251; *Sawtelle*, 70 F.3d at 1389. In the instant case, Co-defendants Baker's and McClanahan's telephone calls and U.P.S. mailings are not directly related to Plaintiff's cause of action, to wit a breach of contract claim for Eldorado's refusal to pay the 10% sales commission.[3] Thus, the relatedness test is not satisfied.

Should the Court assume personal jurisdiction over Co-defendants Baker and McClanahan, the Court would be holding that attorneys and their legal secretaries could be hailed into the court of any forum that has personal jurisdiction over any of their clients. The Court has found no legal authority to substantiate such a result. *See Sawtelle*, 70 F.3d 1381. Assuming jurisdiction over Co-defendants Baker and McClanahan would undoubtfully violate due process traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154. As previously stated, in order to support a finding that specific jurisdiction exists, the Court must make an affirmative finding **on each** of the three parts of the inquiry. *Phillips Exeter*, 196 F.3d at 288. Therefore, since the Court finds that Plaintiff has not met his burden of proof as to the first part, we need not consider the second and third part of the personal jurisdiction inquiry. *See Santiago–Gonzalez v. Motion Powerboats, Inc.*, 334 F.Supp.2d 98, 105 (D.P.R.2004); *Sawtelle*, 70 F.3d at 1394. Accordingly, the Court hereby **GRANTS** Co-defendants Baker's and McClanahan's Motion to Dismiss.

### 2. Co-defendants Eldorado and Chitram Sewnarine

An examination of the record reveals that the facts alleged by both parties as to Co-defendants Eldorado's and Chitram Sewnarine's contacts with the Puerto Rico forum are somewhat contradictory. However, the Court reiterates that, in accordance with the traditional personal jurisdiction analysis, it will take the facts affirmatively alleged by Plaintiff as true

---

**2.** In the Complaint, Plaintiff suggests that Co-defendants Baker and McClanahan were "negligent" when they tortiously interfered with his contractual relationship with Eldorado (Docket # 1, ¶¶ 19–21). However, in his motion opposing Defendants' motions to dismiss, Plaintiff repeatedly alleges that this is a breach of contract claim against **all** defendants. *See* Docket # 23, p. 13. Furthermore, although the relatedness inquiry may be different in a tort claim, when the alleged tort is

the intentional interference with a contractual relationship, "the two inquiries begin to resemble each other." *Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd.*, 298 F.3d 1, 10 (1st Cir.2002).

**3.** The same would be true for a claim of tortious interference with a contractual relationship.

and construe the disputed facts in the light most favorable to Plaintiff without crediting any conclusory allegations. *Ticketmaster–New York*, 26 F.3d at 203. Additionally, the Court will also give credit to the facts put forth by Defendants to the extent that these are uncontradicted. *Mass. Sch. of Law*, 142 F.3d at 34.

In order to prove, *prima facie*, that this Court has personal jurisdiction over Co-defendants, Plaintiff alleges that it entered into a joint venture agreement with Eldorado and that this agreement was executed in Puerto Rico.[4] (Docket # 1, ¶ 7). Additionally, Plaintiff avers that Co-defendant Chitram Sewnarine and Eric Bell, a former Eldorado employee, visited Puerto Rico to retain its services as a real estate broker and that, accordingly, the initial terms, covenants and conditions of said agreement were stipulated during said visit (Docket # 1, ¶¶ 8–9 & Docket # 23, ¶ 2(a)). Pursuant to said agreement, Plaintiff was to procure Puerto Rico clients to purchase Florida homes built by Eldorado (Docket # 23, ¶ 2(c)). Allegedly, Plaintiff was to be paid a 10% commission of the sale price for the Florida homes sold to the procured Puerto Rico clients (Docket # 23, ¶ 2(c)). The record does not contain a written binding (executed or signed) joint venture agreement between the parties. However, it is undisputed that there was in fact a contractual or business relationship between the parties in the form of a verbal agreement (Docket # 22, Exhibit A ¶ 27). The content and parameters of said agreement, to wit whether Eldorado promised to pay a 10% commission to

Plaintiff for the sale of the Florida homes, are not at issue here.

As proof of Co-defendants' specific contacts with Puerto Rico, Plaintiff has provided evidence as to one thousand three hundred and thirty-seven (1,357) phone calls made by Co-defendants to Puerto Rico and three hundred and ninety-one (391) phone calls made by Plaintiff to Co-defendants and/or their legal representation. (Docket # 23, Exhibits 1 & 2). Furthermore, Plaintiff has provided the names of the Puerto Rico clients and the sale price and sale commissions as to thirty (32) sale transactions between Eldorado and the Puerto Rico clients (Docket # 23, ¶ 2(k)).

On the other hand, Co-defendants aver, and it remains undisputed, that it was Plaintiff who initiated contact with Eldorado in order to establish a business relationship (i.e., Mr. Julio Gil de Lamadrid, owner of Trio Realty, Inc., saw Eldorado Florida's advertisements and offered to provide Eldorado with buyers from Puerto Rico in return for a fee)(Docket # 22, Exhibit A ¶¶ 7–10). It is further undisputed that Mr. Gil traveled to Florida to pitch a proposal to Eldorado and that it was only after said meeting that Co-defendant Sewnarine traveled to Puerto Rico for the first and only time to meet with Plaintiff (Docket # 22, Exhibit A, ¶¶ 13, 16). Therefore, it is reasonable to conclude that Plaintiff, and not Co-defendants, sought out the business relationship with Eldorado. We now proceed to apply the First Circuit tripartite inquiry to determine whether, in view of the previously stated facts, this Court's

---

4. Co-defendants instead argue that the alleged joint venture agreement was negotiated and agreed upon during Plaintiff's visit to Florida (Docket # 22, pp. 2–3 & Docket # 29, p. 3). Co-defendants have also provided an unsigned copy of the alleged joint venture agreement (Docket # 22, Exhibit D). The Court notes that, for the purposes of this analysis,

the specific location in which the agreement was entered upon is peripheral. Furthermore, since neither party has provided a signed copy of the agreement, the Court will analyze the nature of the party's relationship in accordance with the verbal agreement between them and the facts affirmatively alleged in the pleadings.

exercise of personal jurisdiction over Co-defendants Eldorado and Chitram Sewnarine is justified.

First, we must determine whether Plaintiff's claims satisfy the relatedness test; that is, whether Co-defendants' contacts with Puerto Rico were instrumental in the formation or breach of the joint venture agreement between Plaintiff and Eldorado. *Phillips Exeter*, 196 F.3d at 289. To this end, Plaintiff avers that Co-defendant Chitram Sewnarine's visit to Puerto Rico and Co-defendants' telephone and mail correspondence with Puerto Rico evidence that personal jurisdiction over Co-defendants is appropriate (Docket # 23, p. 13). Plaintiff further alleges that since Co-defendants took affirmative steps directed at the "formation, preservation and/or continuation of the contractual (or otherwise) relationship between them," Co-defendants' Puerto Rico-based activities were instrumental in the formation of their joint venture agreement (Docket # 23, p. 14).

"The relatedness test is, relatively speaking, a flexible, relax standard." *Pritzker v. Yari*, 42 F.3d at 61. However, the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state. *Phillips Exeter*, 196 F.3d at 290. The Court must then look at the parties' prior negotiations, the contemplated future consequences of the business relationship, and the parties' actual course of dealing to determine whether the defendant purposely established minimum contacts within the forum state. *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174.

In the case at bar, Co-defendants acknowledge the existence of a contractual or business relationship with Plaintiff. Furthermore, although Plaintiff fails to specify the nature and recipients of the 1,357 telephone calls made by Co-defen-

dants to Puerto Rico, there is little doubt that these calls, which were made during the course of their business relationship with Plaintiff, represent a substantial contact with Puerto Rico. It is not far-fetched to infer that, to the extent that these calls were made in conjunction with the sale transactions of the Florida homes in Puerto Rico, these calls furthered Eldorado's business relationship with Plaintiff.. Moreover, considering that Co-defendant Chitram Sewnarine's visit to Puerto Rico to determine "whether Trio Realty was a legitimate, established company, with bona fide offices," was at the beginning of the parties' business relationship, it is reasonable to infer that such a visit was instrumental in the formation and continuation of their verbal joint venture agreement. *See* Docket # 22, Exhibit A, ¶ 16. It was after said visit that Eldorado proceeded to close thirty-two (32) sale transactions of Florida homes with Puerto Rico clients procured by Plaintiff. Additionally, the 10% commission allegedly owed to Plaintiff pursuant to the joint venture agreement were payments due in Puerto Rico. Courts have repeatedly "held that the location where payments are due under a contract is a meaningful datum for jurisdictional purposes." *Phillips Exeter*, 196 F.3d at 291.

The totality of the evidence in this case indicates that Co-defendants took affirmative steps in Puerto Rico directed toward the formation and continuation of the contractual relationship between Plaintiff and Eldorado. The fact that Plaintiff may have, in the first place, sought out the business relationship with Eldorado is not dispositive. Co-defendants' visit to Puerto Rico, coupled with the numerous calls made to the forum during the course of their business relationship with Plaintiff, were instrumental in the formation and continuation of the parties' agreement.

Therefore, the relatedness test is appropriately met.

Next, the Court must determine whether Co-defendants purposefully availed themselves of the Puerto Rico forum. The Court takes into account two considerations: the voluntariness of the contact with the forum and the foreseeability of being called to litigate in Puerto Rico. To this end, Plaintiff alleges that Co-defendants had actual knowledge that their product would be purchased by Puerto Rico clients and that all the negotiations for the sale of the Florida homes would be done in Puerto Rico (Docket # 23, p. 16). Additionally, Plaintiff avers that Co-defendants' economic benefits derived by the sale of thirty-two (32) Florida homes in Puerto Rico are sufficient to warrant a finding of purposeful availment (Docket # 23, p. 16).

■ A defendant's contact with the forum state is voluntary when it is not based on the unilateral actions of another party or a third person. *Nowak*, 94 F.3d at 717 (citations omitted). In the case at bar, there is no doubt that Co-defendants' contacts with Puerto Rico were voluntary. Co-defendants voluntarily visited Puerto Rico and engaged in a business relationship with Plaintiff. They agreed to the sale of their Florida homes to Puerto Rico clients. Furthermore, Co-defendants' continuous phone calls to Puerto Rico demonstrate their ongoing interest in the sale of their Florida homes in Puerto Rico. "[E]xercising jurisdiction is appropriate where defendant purposefully derives economic benefits from its forum-state activities." *Id.* (citing *Pritzker*, 42 F.3d at 61–62); see *Jet Wine*, 298 F.3d at 11 (holding that the voluntary acts which lead a company to generate revenue constitute sufficient purposeful availment to satisfy the requirements of due process). Therefore, these contacts suggest that Co-defendants voluntarily availed themselves of the benefits of conducting business in Puerto Rico. It follows that Co-defendants could have also reasonably foreseen to be sued in a Puerto Rico court.

The third step in this tripartite jurisdictional inquiry is the reasonableness test or gestalt factors. The gestalt factors support the conclusion that jurisdiction over Co-defendants Eldorado and Chitram Sewnarine is reasonable. We explain. The first factor is Co-defendants' burden of appearing. *Sawtelle*, 70 F.3d at 1395. The Court acknowledges that there is some burden on Co-defendants if they must appear in Puerto Rico's courts. However, the First Circuit Court has held that since defending in a foreign jurisdiction almost always is inconvenient for the out-of-state party, that party needs to demonstrate a "special or unusual burden" in order to tilt the scale in favor of lack of personal jurisdiction. *Pritzker*, 42 F.3d at 64. Co-defendants have not pled that it would be a "special or unusual burden" for them to appear in this Court to defend their case. Accordingly, this factor weighs in favor of the Court's exercise of jurisdiction.

The second factor is the forum state's interest in adjudicating the dispute. *Sawtelle*, 70 F.3d at 1395. This factor is meant to determine the extent to which the forum has an interest in adjudicating the dispute. *Id.* (citing *Foster–Miller*, 46 F.3d at 151). The source of the parties dispute is a verbal agreement to which one of the parties is a Puerto Rico corporation doing business in Puerto Rico. Puerto Rico has an interest in enforcing the contracts entered into by its businesses. See *Jet Wine & Spirits*, 298 F.3d at 12. Therefore, we find that Puerto Rico has an interest in exercising jurisdiction over Co-defendants.

In the third place, we consider Plaintiff's interest in obtaining convenient and effec-

tive relief. *Sawtelle*, 70 F.3d at 1395. The First Circuit Court has repeatedly held that "a plaintiff's choice of forum must be accorded a degree of deference with respect the issue of its own convenience." *Id.* (citations omitted). Therefore, we find that Plaintiff has an interest in obtaining relief for his breach of contract claim in the courts of its own state. *See Jet Wine & Spirits*, 298 F.3d at 12. Accordingly, we find that this factor weighs in favor of exercising personal jurisdiction over Co-defendants.

The fourth factor is the judicial system's interest in obtaining the most effective resolution of the controversy. *Sawtelle*, 70 F.3d at 1395. Considering that this case involves a verbal agreement between a Puerto Rico corporation and a Florida corporation, there are probably necessary witnesses in both Florida and Puerto Rico. *See Rodríguez*, 113 F.Supp.2d at 254. Therefore, this factor "does not appear to cut in either direction." *Ticketmaster-New York*, 26 F.3d at 211. The fifth factor is also neutral. This final factor is the common interest of all sovereigns in promoting substantive social policies. *Sawtelle*, 70 F.3d at 1395. "Here the most important prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-state actors." *Id.* (*citing Burger King*, 471 U.S. at 473, 105 S.Ct. 2174). We find that both Puerto Rico and Florida have an interest in providing a convenient forum to their respective residents. Therefore, we find that this factor favors neither party.

Of the five gestalt factors, three weigh in favor of personal jurisdiction and two are neutral. Hence, it would be fair and reasonable for this Court to assume personal jurisdiction over Co-defendants in this case. Furthermore, this Court's jurisdiction over Co-defendants Eldorado and Chitram Sewnarine would not offend due process traditional notions of "fair play and substantial justice." Accordingly, the Court hereby **DENIES** Co-defendants Eldorado's and Chitram Sewnarine's request for dismissal.

### 3. Co-defendant Jana Sewnarine

■ Co-defendant Jana Sewnarine is Co-defendant Chitram Sewnarine's wife (Docket # 22, Exhibit B ¶ 1). She worked in Eldorado briefly and ceased working there in the year 1999 prior to the events alleged in the complaint (Docket # 22, Exhibit B ¶¶ 6–7). Her husband, Co-defendant Chitram Sewnarine, is the sole owner of Eldorado (Docket # 22, Exhibit B ¶ 8). Plaintiff has made no allegations, presented no evidence, nor made any claims against Co-defendant Jana Sewnarine. *See* Dockets ## 1,23. Plaintiff has not even alleged any contacts by Co-defendant to Puerto Rico (Docket # 29, p. 8). Finally, it is undisputed that Co-defendant Jana Sewnarine has never been to Puerto Rico nor has any contacts with this forum (Docket # 22, Exhibit B ¶ 9). Thus, the Court finds that it cannot assume personal jurisdiction over Co-defendant Jana Sewnarine. Accordingly, the Court hereby **GRANTS** Co-defendant Jana Sewnarine's request for dismissal.

### Conclusion

For the reasons stated herein, Plaintiff's claims against Co-defendants Baker, McClanahan and Jana Sewnarine are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims against Co-defendants Eldorado and Chitram Sewnarine remain pending. Judgment shall be entered accordingly.

**SO ORDERED.**