Luis A. **CARRERAS**, et al., Plaintiffs,

v.

**PMG COLLINS, LLC,** et al., **Defendants.**

Civil No.: 08–1827 (DRD).

United States District Court, D. Puerto Rico.

Sept. 29, 2010.

**378**

Richard Schell–Asad, San Juan, PR, for Plaintiffs.

Daniel F. Blonsky, Coffey Burlington Office, Miami, FL, Edward W. Hill–Tollinche, San Juan, PR, for Defendants.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL BACKGROUND

The instant case, which is brought in diversity, alleges four causes of action[1]

---

**1.** As correctly noted by Magistrate Judge Lopez, the four causes of actions Plaintiffs allege are:

(1) that their contracts should be deemed null because ISG, acting on behalf of PMG as the exclusive sales representative of MEI, offered and sold the units to them without complying with certain requirements Puerto Rico law imposes upon those who engage in the sale or offer for sale in Puerto Rico of real property located outside of Puerto Rico, ... (2) that under Puerto Rico law, their payments should be returned because they were denied financing, ... (3) that the contracts should be rescinded because the collapse of the real estate marked substantially changed the terms under which the agreements were conceived, ... and (4) that they should be awarded damages for defendants' alleged failure to act in good faith.

(Docket No. 61, p. 1–2).

arising under the laws of Puerto Rico and relating to contracts to purchase condominium units in "MEI, a Condominium" ("MEI") in Miami, Florida from Defendant PMG Collins, LLC ("PMG") and Defendant International Sales Group, LLC ("ISG"), who acted as PMG's sales representative. (Docket No. 1). Currently before the Court are two motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, for change of venue, filed by Defendant ISG (Docket No. 38) and Defendant PMG (Docket No. 37). These motions were both filed on October 14, 2009. Therein, both Defendants asserted that there are insufficient minimum contacts between each Defendant and Puerto Rico to warrant personal jurisdiction in the instant case.

Plaintiffs opposed Defendants' motions to dismiss or for change of venue on November 9, 2009 (Docket No. 45). Plaintiffs asserted that an application of the Gestalt factors weighs in favor of finding that the Court indeed may exercise personal jurisdiction over Defendants as Defendants "engaged in Puerto Rico in the brokerage, marketing and sale of real estate property outside of Puerto Rico" and, in the process, established sufficient minimum contacts to warrant a finding that the Court exercises personal jurisdiction over them.

On December 4, 2009, Defendants ISG and PMG both filed their replies to Plaintiffs' oppositions to the motions to dismiss (Docket Nos. 50 & 52). In ISG's reply, it asserted that Plaintiff misrepresented the facts relevant to ISG's contacts in Puerto Rico by focusing on events that occurred after the relevant dates in the instant case. Further, ISG noted that, contrary to Plaintiff's assertions, ISG and ISG, S en C are distinct entities which may not be substituted for each other in order to assess personal jurisdiction. Further, ISG argued that it may not be considered PMG's agent in any matters other than contractual matters.

In turn, PMG asserted that, when Plaintiffs opposed its motion to dismiss, they misrepresented facts pertaining to publications in which PMG placed advertisements. Further, PMG argued that Plaintiffs' position regarding the significance of these publications is unsupported by the law in the First Circuit. PMG also argued that ISG may not be considered its agent for any noncontractual matters.

On December 29, 2009, Plaintiffs filed their sur-reply (Docket No. 56) to Defendant ISG's motion. Therein, Plaintiffs disputed several of the factual predicates for ISG's replies. Among Plaintiffs' assertions are allegations that Lillybeth Rosario ("Rosario"), ISG's alleged co-broker, is a biased witness as she has a financial interest in the litigation and that ISG, rather than ISG, S. en C., marketed the Trump International Golf Course Club in Puerto Rico ("Trump Puerto Rico property"), which constitute bald allegations not properly supported by any evidence on the record. Plaintiffs averred that their allegations show that the Court may exercise in personam jurisdiction over ISG. Plaintiffs supplemented this motion with further evidentiary support (Docket No. 57) on March 11, 2010.

On April 12, 2010, the Court referred (Docket No. 59) the pending motions to dismiss, along with all related motions, to Magistrate Judge Lopez for his recommendation. On September 13, 2010, the Magistrate Judge entered his *Report and Recommendation* (Docket No. 61) that the Court grant the motions to dismiss. Magistrate Judge Lopez found that Plaintiff showed that Defendants offered for sale Florida properties in Puerto Rico, thus meeting the first prong of the specific jurisdiction test. The Magistrate Judge then found that Plaintiffs' argument for

specific jurisdiction over PMG and ISG failed on the second prong. Specifically, Magistrate Judge Lopez found that the act of working with Rosario as a co-broker, joined with calls to Plaintiffs in Puerto Rico in relation to the sale of the MEI apartments, as well as other related phone calls, and the act of sending the agreements to Puerto Rico for Plaintiffs' signature was insufficient to constitute purposeful availment.

The Magistrate Judge then assessed whether it could exercise general jurisdiction over either PMG or ISG. As to PMG, Magistrate Judge Lopez determined that the sale of three MEI properties in Florida to three individuals in Puerto Rico as well as an advertisement and a feature in magazines were insufficient to merit the exercise of general jurisdiction. The Magistrate Judge then carefully scrutinized ISG's ties to Puerto Rico, particularly noting ISG's relationship to Rosario, the two visits made by an ISG sales agent to Puerto Rico in 2007 (including one visit which ISG's president and director of sales joined), an unspecified number of emails and phone calls to six residents of Puerto Rico and seven ISG sales to five Puerto Rican residents. Magistrate Judge Lopez found that none of these factors imparted general jurisdiction and concluded that, "[e]ven assuming that Rosario is a broker [rather than a client] with an ongoing relationship with ISG, the business she generates and the evidence of other ISG marketing and sales efforts in Puerto Rico do not suffice to show 'continuous and systemic pursuit of general business activities' in Puerto Rico." (*Id.* at 15).

Finally, the Magistrate Judge specifically debunked Plaintiffs' reliance on the sale of the Trump Puerto Rico property by ISG S en C in support of its contention that the sale of this property provides general jurisdiction over ISG. The Court noted that these two entities constitute separate companies and that Plaintiffs have provided the Court with no reason to pierce the corporate veil in the instant case.

On September 16, 2010, Plaintiff filed its objections (Docket No. 62) to the Magistrate's *Report and Recommendation.* First, Plaintiffs objected to the Magistrate Judge's application of facts to the second prong of the specific jurisdiction inquiry. In this first objection, Plaintiffs primarily highlighted ISG's practice of contacting five residents of Puerto Rico in order to offer them properties which it marketed throughout the world. Plaintiffs also objected to the Magistrate Judge's determination that the publication of an ad in *American Way* did not support a finding that the Court may exercise specific jurisdiction over ISG, stating that this magazine is "present and almost forced reading to (sic) anyone that boards an American Eagle or American Airlines flight to and from Puerto Rico." (*Id.* at 7). Plaintiffs also highlighted that ISG requested that potential clients in Puerto Rico send them a copy of their deposit checks from Puerto Rico, and that it mailed the purchase agreement to the clients in Puerto Rico for their signature. Finally, Plaintiffs alleged that ISG's agent made presentations regarding projects, including the MEI apartments, to residents of Puerto Rico during a trip in October of 2007. Thus, Plaintiffs argued that the Magistrate Judge erred when he determined that the Court may not exercise specific jurisdiction over ISG.

Plaintiffs also objected to Magistrate Judge Lopez' determination that the Court could not exercise general jurisdiction over ISG. Plaintiffs relied primarily on the actions of ISG, S. en C. to justify the imposition of general jurisdiction on ISG. However, Plaintiffs proffered only bald legal arguments for piercing ISG, S. en C.'s corporate veil to impose personal jurisdiction on ISG, which are supported solely by conjecture, an advertisement on

ISG's website and a shared Florida address.[2]

On September 24, 2010, Defendant PMG filed an opposition to Plaintiffs' objection (Docket No. 63). This opposition was filed seven days after entry of Plaintiffs' objections, which were due five calendar days after entry of the *Report and Recommendation*. Further, PMG failed to request the leave of the Court to file this document, which is not specifically authorized by the Local Rules or the Federal Rules of Civil Procedure. Accordingly, the Court shall not consider this filing herein.

## II. REFERRAL TO THE MAGISTRATE JUDGE

█ The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); *see also* Local Rule 72(a); *see also Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED. R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

█ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996) (en banc)(extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982) (en banc)(appeal from district court's acceptance of un-objected to findings of

**2.** The Court notes that, even according to Plaintiffs' assertions, although ISG and ISG, S. en C. share an address for one location pertaining to both companies in Aventura, Florida, and although both appear to maintain offices on the second floor of the building, there is no showing that they even share a suite in that building, rather than separate suites on the same floor.

magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

In the instant case, Plaintiff has filed several objections to the Magistrate Judge's *Report and Recommendation* (Docket No. 62). Thus, the Court reviews the portions of the *Report and Recommendation* to which objections were made *de novo.*

### III. RELEVANT FACTUAL BACKGROUND

■■■ Where, as in the instant case, the Court is asked to rule upon a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the Court must apply the *prima facie* standard. *U.S. v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001). Under this standard, "[t]he plaintiff bears the burden of proving the court's personal jurisdiction over a defendant." *Daynard v. Ness. Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir.2002) (internal quotation omitted). "To make a *prima facie* showing, the plaintiff may not rest upon unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction." *Rodriguez v. Dixie Southern Indus., Inc.,* 113 F.Supp.2d 242, 249 (D.P.R.2000) (citing *Foster–Miller, Inc. v.*

*Babcock & Wilcox Can.,* 46 F.3d 138, 145 (1st Cir.1995); *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992)); *see also Harlow v. Children's Hospital,* 432 F.3d 50, 57 (1st Cir.2005). Wherever a contradiction exists between evidence proffered by a plaintiff and by a defendant, the Court must take the "specific facts affirmatively alleged by the plaintiff as true . . . and construes them in the light most favorable to the plaintiff's jurisdictional claim." *Rodriguez,* 113 F.Supp.2d at 249 (citing *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994)). With this *prima facie* standard in mind, the Court recites the following relevant facts.

The instant controversy surrounds two purchase agreements to buy apartments at MEI in Miami, Florida, which were signed by Plaintiffs in the instant case. Defendant PMG, a Florida corporation, owned the MEI building. On October 13, 2005, Plaintiff Habibe signed a purchase agreement, and on April 27, 2006, Plaintiff Carreras signed a purchase agreement. Plaintiffs allege that, after they paid a portion of their respective units in MEI, financial institutions' policies regarding real estate loans in Miami changed. This change ultimately resulted in the denial of financing to Plaintiffs, which was necessary to complete the purchase of the units.

ISG acted as PMG's broker in the sale of units in MEI. ISG, in turn, paid referral fees to a Puerto Rico resident, named Lillybeth Rosario ("Rosario"), as an apparent co-broker in the sales of MEI units to Plaintiffs. Evidence on the record as to who initiated each sale is contradictory. Viewing the evidence in the light most favorable to Plaintiffs, Maria Laura Rainer ("Rainer"), who was employed as a salesperson for ISG in Florida, telephoned[3]

---

**3.** Contradictory testimony provided by Rosario states that Plaintiff Habibe first contacted her to notify her that he was interested in real

estate in Miami and that she subsequently referred him to Rainer. Rainer testifies that

Plaintiffs in Puerto Rico to provide quotes regarding the prices[4] of the units which were ultimately sold to Plaintiffs. Ultimately, Rosario received referral fees for units sold to Plaintiffs Habibe and Carreras, as well as Habibe's father.

After Plaintiffs agreed to the terms of the sale via telephone, Rainer later contacted them to request that they each fax a copy of a check in the amount of $25,000.00 to ISG in Florida in order to reserve the units. After the faxes were received, ISG sent the purchase agreements to Plaintiffs in Puerto Rico for their signature. As already noted, Plaintiffs signed the purchase agreements in October of 2005 and April of 2006 respectively. A clause in each purchase agreement provides that "[a]ny disputes that develop under [them] will be settled according to Florida law." Plaintiffs allege that they tendered payments to PMG's escrow agent and that they then traveled on multiple occasions to Florida in order to inspect the units, to negotiate further terms following the signing of the purchase agreements and to seek financing for the final payments.

Although Plaintiffs proffer no copies of the actual advertisements or articles allegedly printed regarding MEI, they do point to the deposition testimony of Ryan Shear ("Shear"), a junior developer at PMG, to show that such advertisements and articles exist. Specifically, Plaintiffs utilize Shear's ambiguous deposition testimony to show that MEI may have been advertised in the *New York Times* and the *American Way* which is available in all American Airlines and American Eagle flights, including those to and from Puerto Rico. Shear also stated that MEI may have been

featured in an article regarding the ten most luxurious properties in Miami in *Caras*, a magazine allegedly published in Puerto Rico. However, Shear stated that, if the article indeed ran, it was picked up by the magazine without solicitation.

In total, ISG sold three MEI units to Puerto Rico residents, including the two Plaintiffs in the instant case. Further, ISG has sold four other properties outside of Puerto Rico to Puerto Rico residents. Of these four additional properties, one was sold to Plaintiff Carreras. Rainer, acting on behalf of ISG, has periodically called or emailed the Puerto Rico residents who purchased these seven properties.

In October of 2007, well after both Plaintiffs signed their respective purchase agreements, Rainer traveled to Puerto Rico to make a marketing presentation in a hotel in San Juan regarding properties in Panama and New Orleans. Although Rainer asserts that neither she nor anyone else acting on ISG's behalf traveled to Puerto Rico to meet with either Plaintiffs or anyone else in connection with the sale of units at MEI, contradictory evidence indicates that she also spoke about MEI in that presentation.

In December of 2007, Rainer once again returned to Puerto Rico on a trip related to the Trump Puerto Rico property. Although ISG's website provides information regarding the Trump Puerto Rico property, and lists a Puerto Rico address for a sales center, on May 7, 2008, a Puerto Rico limited commercial partnership called ISG, S. en C. entered into a brokerage agreement for the marketing and sale of that property.

Plaintiff Habibe referred Plaintiff Carreras to her as a person potentially interested in purchasing a MEI unit.

4. Plaintiff Habibe's unit was priced at $1,595,000.00 and Plaintiff Carreras' unit was priced at $1,595,000.00. Each Plaintiff was

to pay twenty percent of the purchase price prior to the closing date, and the remaining eighty percent was to be financed through a financial institution in Florida. Plaintiffs agreed to these terms via telephone calls with Ranier.

## IV. IN PERSONAM JURISDICTION

■ When reviewing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction in a diversity case, the Court conducts a two-part inquiry. *See Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994). First, the Court must determine whether Puerto Rico "has a long-arm statute that purports to grant jurisdiction over" Defendants. *Id.* Next, the Court must satisfy itself that "exercise of jurisdiction pursuant to [Puerto Rico's long-arm] statute comports with the strictures of the Constitution." *Id.* As Puerto Rico's long-arm statute "extends personal jurisdiction as far as the United States Constitution will permit," the Court's inquiry begins and ends with the second factor of the personal jurisdiction inquiry. *Rodriguez*, 113 F.Supp.2d at 250.

> The starting point [for the Court's inquiry regarding personal jurisdiction] is *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which laid down the jurisdictional principle that 'due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain **minimum contacts** with it such that the maintenance of the suit **does not offend traditional notions of fair play and substantial justice.**

*Dalmau Rodriguez v. Hughes Aircraft Co.*, 781 F.2d 9, 12 (1st Cir.1986) (quoting *International Shoe*, 326 U.S. at 315, 66 S.Ct. 154) (emphasis ours).

### A. SPECIFIC JURISDICTION

■ "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998); *see also Hannon v. Beard*, 524

F.3d 275, 279–80 (1st Cir.2008). The relatedness requirement mandates a showing of material connection between the cause of action and the defendant's forum-based contacts. *Harlow*, 432 F.3d at 61. Thus, the plaintiff must show that the defendant's in-state conduct "form[s] an important, or at least material, element of proof in the plaintiff's case." *Id.* (internal quotation omitted). In contract cases, the Court must "look to the elements of the cause of action and ask whether the defendant's contacts with the jurisdiction were instrumental either in the formation of the contract or in its breach." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir.1999). This inquiry is stringent and has been analogized to the requirement of proximate cause in tort law. *United Elec. Workers v. 163 Pleasant St. Corp. (Pleasant I )*, 960 F.2d 1080, 1089 (1st Cir.1992)

■ The inquiry regarding specific jurisdiction involves a tripartite analysis. *Phillips Exeter Acad.*, 196 F.3d at 288.

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of [the Gestalt factors] that touch upon the fundamental fairness of an exercise of jurisdiction.

*Id.* Thus, the Court must make an affirmative finding regarding the first two elements of the test before it may assess the Gestalt factors of the third element, and must make an affirmative finding regard-

ing all three elements to find that specific jurisdiction exists. *See id.*

■ As an initial matter, the Court notes that it is settled law that the specific jurisdiction inquiry does not look to events that occurred subsequent to the alleged wrongdoing. *Harlow*, 432 F.3d at 61. Thus, Plaintiffs' arguments that Rainer's visits to Puerto Rico in 2007 provide grounds for the exercise of the Court's jurisdiction are all unfounded in law and the Court shall not further consider them herein.

■ As the Magistrate Judge correctly found, PMG's only grounds for asserting specific jurisdiction that do not rely upon ISG's actions as its agent are the advertisement which may have appeared in *American Way* and the unsolicited article which may have appeared in *Caras*. As this type of published material is patently insufficient to provide the Court with specific personal jurisdiction, the Court's inquiry regarding specific jurisdiction over PMG is entirely subsumed into its inquiry regarding ISG. *See Dalmau Rodriguez*, 781 F.2d at 9 (finding that an advertisement is not sufficient to reasonably lead the defendant to believe that it could be hailed into court in Puerto Rico).

As just noted, Plaintiff has further alleged that specific jurisdiction exists over ISG and, as ISG acted as PMG's agent in the contracts which lie at the heart of the instant action, over PMG as well. Thus, the Court shall analyze Plaintiff's showing of specific jurisdiction as to ISG and, if it finds that such jurisdiction exists, shall impute that jurisdiction to PMG as ISG undisputably acted as PMG's agent. *See United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp. (Pleasant II )*, 987 F.2d 39, 45 n. 13 (1st Cir.1993).

■ The connections between ISG and Puerto Rico cited by Plaintiffs which are correctly contemplated by the Court follow. Plaintiffs were allegedly contacted by

Ranier regarding the MEI. Plaintiffs wrote deposit checks for the MEI units in Puerto Rico and faxed copies of those checks from Puerto Rico. ISG mailed the purchase agreements to Plaintiffs in Puerto Rico, who then signed them in Puerto Rico and returned them to ISG in Florida. Finally, Rosario, who lives and works in Puerto Rico, operated as a type of co-broker in these two deals.

The first prong of the specific jurisdiction inquiry is "relatively speaking, a flexible, relaxed standard." *Pritzker*, 42 F.3d at 61. Here, Plaintiffs have shown that some actions taken in conjunction with the purchase of MEI units indeed took place in Puerto Rico. ISG allegedly contacted Plaintiffs via telephone in Puerto Rico, sent the purchase agreements to Plaintiffs in Puerto Rico for their signature and asked that Plaintiffs fax copies of the deposit checks from Puerto Rico to Florida. Accordingly, the Court agrees with Magistrate Judge Lopez' finding that Plaintiffs "have submitted affirmative proof that defendants offered for sale or sold Florida properties in Puerto Rico." *See e.g. Rodriguez*, 113 F.Supp.2d at 252 (finding that where the "totality of the evidence indicates that [Defendant] took affirmative steps in Puerto Rico directed towards the formation of the contractual relationship," the relatedness requirement was met). Thus, the Court finds that Plaintiffs have passed the first, low hurdle on their way to showing that specific jurisdiction exists.

However, the Court still must ascertain whether, in light of the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" show that Defendants "purposefully established minimum contacts within the forum." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "[I]t has

been repeatedly observed that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Inamar Investment, Inc. v. Lodge Prop., Inc.,* 737 F.Supp. 12, 14 (D.P.R.1990) (citing *Ganis Corp. of California v. Jackson,* 822 F.2d 194, 197 (1st Cir.1987); *Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir.1986)). Thus, the Court should keep in mind that "the specific nature of a contact is also important in discerning the elements of purposeful availment and foreseeability." *Pritzker,* 42 F.3d at 62.

In the instant case, Plaintiffs' assertions of purposeful availment center on the aforementioned acts, as well as Rosario's role as a co-broker in the MEI Sales. However, the Court notes that the subject matter of the contracts in the instant case was condominium units located in Florida, that payments were due in Florida[5] and that Florida law specifically governed the contracts between the parties. *See Phillips Exeter Acad.,* 196 F.3d at 291 (noting that the location where payment is due is an important concern in determining personal jurisdiction). Thus, the center of the instant dispute lay with condominium units in Florida for which Plaintiffs had to travel to Florida to comply with the contracts.

The only direct ties between Defendants and Puerto Rico in connection with the contracts were related to Plaintiffs' signature of purchase agreements in Puerto Rico, a request that Plaintiffs fax deposit checks to Florida from Puerto Rico and several calls incidental to the contracts. Defendants' direct aim was to sell property in Florida; material performance of the contract was to be completed in Florida and Florida law was to govern the contract for the real property. *See Inamar Invest., Inc.,* 737 F.Supp. at 14 (finding no pur-

poseful availment where the contract concerned a condominium in Colorado and where Colorado law governed the agreement); *see also Pritzker,* 42 F.3d at 61 (noting that a single contact is sufficient to establish in personam jurisdiction, but emphasizing that, to establish jurisdiction, the contact(s) must be meaningful).

Thus, the Court agrees with the Magistrate Judge's determination that ISG and, by association, PMG, could not have reasonably anticipated the possibility of being subject to a lawsuit in Puerto Rico would arise from their dealings with Plaintiffs. Consequently, as the Court has found that Plaintiffs' arguments for specific jurisdiction fail upon the second element of the tripartite test, it refrains from further analyzing the Gestalt factors. *See Phillips Exeter Acad.,* 196 F.3d at 288.

## B. GENERAL JURISDICTION

In the alternative, Plaintiffs contend that this Court exercises general jurisdiction over PMG and ISG. Their allegations of general jurisdiction as to ISG are based in part upon the necessity of piercing the corporate veil of the Puerto Rico registered company, ISG, S. en C., which is a distinct entity from ISG.

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in *continuous and systematic activity,* unrelated to the suit, in the forum state." *Pleasant I,* 960 F.2d at 1088 (emphasis ours). Thus, there is no requirement of relatedness between the plaintiff's claims and the defendant's contacts with the forum; however, the "defendant's contacts with the forum state must

---

**5.** It also appears from Plaintiffs' *Complaint,* as well as from the subsequent filings in the instant case, that it is undisputed that the financing for the remainder of the purchase price of the units was to be obtained from Florida financial institutions.

be considerably more extensive than the minimum contacts necessary for specific jurisdiction." *Lang v. Corporacion De Hoteles, S.A.,* 522 F.Supp.2d 349, 359 (D.P.R.2007) (citing *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 463 (1st Cir.1990)). Thus, only the "continuous and systematic pursuit of general business activities in the forum state" shall suffice for general jurisdiction. *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 216 (1st Cir.1984). Accordingly, "the standard for evaluating whether contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." *Harlow,* 432 F.3d at 64 (internal quotation omitted).

 Plaintiffs do not oppose the Magistrate Judge's determination that no general jurisdiction exists over PMG. Upon review of the Magistrate Judge's recommendation, the Court agrees with the Magistrate's determination that the only grounds for general jurisdiction over PMG which are correctly analyzed herein are the sale of three MEI properties to individuals in Puerto Rico, as well as the inclusion of an article discussing MEI in *Caras* and an advertisement for MEI in *American Way.* Ultimately, the Court agrees with Magistrate Judge Lopez' determination that "[t]hese contacts are clearly insufficient to merit the exercise of general jurisdiction." *See Glater,* 744 F.2d 213 (employment of eight sales representatives to distribute product information and sales of products to multiple distributors in forum state insufficient to establish general jurisdiction); *see also Dalmau Rodriguez,* 781 F.2d at 9 (an advertisement will not support a finding of minimum contacts for personal jurisdiction); *see also Lang,* 522 F.Supp.2d at 364 (advertising and employ-

ing salesmen is insufficient to permit a state to assume jurisdiction). Thus, the Court may not exercise general jurisdiction over PMG. Accordingly, as the Court has found that it exercises neither specific nor general jurisdiction over PMG, it hereby **GRANTS** PMG's motion to dismiss under Rule 12(b)(2) (Docket NO. 37) as to this Defendant.

 In support of their argument that the Court may exercise general jurisdiction over ISG, Plaintiffs point to ISG's relationship with Rosario, as well as the two visits by Ranier in 2007[6] and the sales of seven properties outside of Puerto Rico to residents of the island. As correctly determined by the Magistrate Judge, Rosario is not an employee of ISG, but rather is a client who has only received a maximum of six payments representing referral fees and commissions from ISG. Although Rosario is not an employee of ISG, even if the Court had found that she was an employee, this factor would not weigh heavily towards imposition of general jurisdiction. *See e.g. Harlow,* 432 F.3d at 66 (quoting *Glater,* 744 F.2d at 217 (finding that even employing salespersons to solicit orders in a forum is not sufficient to grant in personam jurisdiction)); *see also Lang,* 522 F.Supp.2d at 364. Further, the sale of seven properties to residents of the island and the participation of ISG personnel in two marketing trips to Puerto Rico demonstrates, at best, sporadic contact with the forum. *See Dalmau Rodriguez,* 781 F.2d at 14–15 (finding that two trips to the forum, along with other factors, was insufficient to confer jurisdiction). Thus, the Court concludes that these few isolated contacts with Puerto Rico are insufficient to meet the strictures of the general jurisdiction analysis as they do not show a

---

**6.** As correctly stated by Magistrate Judge Lopez, unrelated contacts with a forum "which occurred after the cause of action arose, but before the suit was filed, may be considered for purposes of the general jurisdiction inquiry." *See Harlow,* 432 F.3d at 64.

"continuous and systematic pursuit of general business activities" in Puerto Rico. *E.g. Glater*, 744 F.2d at 213.

In its opposition to the Magistrate Judge's *Report and Recommendation*, Plaintiffs ground their assertions that general jurisdiction exists over ISG upon the company's alleged involvement in sales of the Trump Puerto Rico property, whose sales and marketing are, in fact, attributed to ISG, S. en C. However, other than mention of the property on the ISG website, which refers viewers to direct inquiries to an address in Puerto Rico, evidence that Rainer and the President of ISG came to Puerto Rico once on a visit concerning the Trump Puerto Rico property, and evidence that ISG and ISG, S. en C. both maintain offices on the same floor of an office building in Florida, Plaintiffs proffer no support for their brief and conclusory argument that the actions and contacts of ISG, S. en C. should be attributed to ISG. Although it is possible to pierce the corporate veil in order to attribute the contacts or actions of a subsidiary to a parent corporation, such a judicial act requires as a prerequisite that plaintiff show "by clear evidence that the parent in fact controls the activities of the subsidiary." *Pleasant I*, 960 F.2d at 1091. Plaintiffs in the instant case have made no such showing and, accordingly, the Court may not impute the contacts or actions of ISG, S. en C. regarding the Trump Puerto Rico property to ISG. Thus, Plaintiffs have also failed to show that ISG maintains a "continuous and systematic pursuit of general business activities" in Puerto Rico and, accordingly, the Court may not exercise general personal jurisdiction over ISG. *E.g. Glater*, 744 F.2d at 213. Consequently, as the Court exercises neither specific nor general jurisdiction over ISG, the Court must **GRANT** ISG's motion to dismiss (Docket No. 38).

## V. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have failed to meet their burden of establishing in personam jurisdiction utilizing the *prima facie* standard as to Defendants ISG and PMG. Accordingly, the Court **GRANTS** Defendants' motions to dismiss under Rule 12(b)(2) (Docket Nos. 37 & 38) and **ADOPTS AND INCORPORATES IN TOTO BY REFERENCE** Magistrate Judge Lopez' *Report and Recommendation* (Docket No. 61). Judgment of dismissal without prejudice shall be entered accordingly.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

MARCOS E. LÓPEZ, United States Magistrate Judge.

## I. PROCEDURAL BACKGROUND

On August 6, 2008, plaintiffs Luis A. Carreras ("Carreras") and Tommy O. Habibe Vargas ("Habibe") filed an amended complaint in this court against defendants PMG Collins, LLC ("PMG") and International Sales Group, LLC ("ISG"). (Docket No. 4.) Plaintiffs' complaint stems from purchase agreements to buy apartments at the "MEI, a Condominium" ("MEI") in Miami, Florida from PMG. After each plaintiff paid a portion of his unit's purchase price, plaintiffs claim, financial institutions' policies regarding real estate loans in the Miami area changed, and ultimately both plaintiffs were denied requested financing. (Docket No. 4, ¶¶ 17, 25, 30–36, 44, 45.) Plaintiffs allege four causes of action: (1) that their contracts should be deemed null because ISG, acting on behalf of PMG as the exclusive sales representative of the MEI, offered and sold the units to them without complying with certain requirements Puerto Rico law imposes upon those who engage in the sale or offer

for sale in Puerto Rico of real property located outside of Puerto Rico, (Docket No. 4, ¶¶ 10, 48–63 (*citing* P.R. Laws Ann., tit. 20, §§ 3047, *et seq.*)); (2) that under Puerto Rico law, their payments should be returned because they were denied financing, (Docket No. 4 at 12–13, ¶¶ 64–67 (*citing* P.R. Laws Ann., tit. 20, § 3054)); (3) that the contracts should be rescinded because the collapse of the real estate market substantially changed the terms under which the agreements were conceived, (Docket No. 4, ¶¶ 68–75); and (4) that they should be awarded damages for defendants' alleged failure to negotiate in good faith, (Docket No. 4 at 14–15, ¶¶ 65–67).

On October 14, 2009, PMG and ISG submitted separate motions requesting dismissal based on lack of personal jurisdiction or, in the alternative, a transfer of venue to the Southern District of Florida. (Docket Nos. 37, 38;) *see* Fed.R.Civ.P. 12(b)(2); 28 U.S.C. § 1404. Those motions, along with plaintiffs' opposition, defendants' replies, and plaintiffs' surreply, are currently pending before the court. (Docket Nos. 45, 50, 52, 56; *see also* Docket Nos. 57, 58.)

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Standard of Review

■ "In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists over the nonresident defendant." *De La Rosa v. Philip Morris Prods., Inc.,* 975 F.Supp. 161, 164 (D.P.R.1997) (*citing Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 207 (1st Cir.1994)). To meet their *prima facie* burden, plaintiffs must proffer " 'evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.' However, 'the *prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record.' In other words, 'the plaintiff[s] must go beyond the pleadings and make affirmative proof.' " *Negrón–Torres v. Verizon Commc'ns,* 478 F.3d 19, 23 (1st Cir. 2007) (*quoting Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992)) (internal citations omitted).

■ Personal jurisdiction over a defendant can be general or specific. *Perez Lang v. Corporacion De Hoteles, S.A.,* 522 F.Supp.2d 349, 359 (D.P.R.2007) (*citing Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998)); *Steen Seijo v. Miller,* 425 F.Supp.2d 194, 198 (D.P.R.2006) (*citing Pritzker v. Yari,* 42 F.3d 53, 60 (1st Cir. 1994)). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec. Radio & Mach. Workers of America v. 163 Pleasant St. Corp. (Pleasant St. I),* 960 F.2d 1080, 1088 (1st Cir. 1992) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction, on the other hand, exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Pleasant St. I,* 960 F.2d at 1088–89. "The critical factor in the personal jurisdiction calculus—both general and specific—is the existence of 'minimum contacts' between the nonresident defendant and the forum. It is axiomatic that a court asserting jurisdiction over a nonresident defendant must find that the defendant maintains sufficient contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Negron–Torres,* 478 F.3d at 24 (quoting *Int'l Shoe v. Wash.,*

*Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In this case, plaintiffs assert the existence of both general and specific jurisdiction over defendants. (Docket No. 45.)

## B. Factual Background

On October 13, 2005 and April 27, 2006, respectively, Habibe and Carreras signed Purchase Agreements to buy apartments at the MEI, a condominium in Miami, Florida, owned by PMG, a Florida corporation. (Docket No. 38–2; Docket No. 38–3; Docket No. 45–2 at 2, ¶ 6; at 5, ¶ 6; at 6.) The broker of the MEI, ISG, also a Florida corporation, paid referral fees to a Puerto Rico resident named Lillybeth Rosario ("Rosario") for her involvement as a local "co-broker" in the sales. (Docket No. 45–2 at 6, 16–19, 27–38; Docket No. 45–3 at 21–26; Docket No. 52–2 at 1; Docket No. 52–3 at 7–8.) To initiate each sale, María Laura Rainer ("Rainer"), a salesperson for ISG, telephoned each plaintiff in Puerto Rico and quoted the prices of the units she ultimately sold.[1] (Docket No. 45–2 at 1, ¶ 2; at 4, ¶ 2; at 6.) Habibe's

unit was priced at $1,595,000.000, and Carreras's unit carried a $1,970,000.00 tag. (Docket No. 45–2 at 1, ¶ 3; at 4, ¶ 3.) Each plaintiff's unit was to be financed in the same manner: twenty percent of the purchase price was to be paid prior to the closing date, and the remaining eighty percent was to be financed through a financial institution in Florida. (Docket No. 45–2 at 1, ¶ 3; at 4, ¶ 3; *see* Docket No. 4, ¶ 36.) Each plaintiff agreed to those terms over the telephone, and Rainer later contacted each of them to request that a copy of a check for $25,000 be faxed to ISG in Florida in order to reserve the units. (Docket No. 45–2 at 1–2, ¶ 4; at 4–5, ¶ 4.) After each plaintiff sent the requested fax, ISG sent their Purchase Agreements to them in Puerto Rico. (Docket No. 45–2 at 2, ¶ 5; at 4, ¶ 5.) Both plaintiffs signed their respective Purchase Agreements in Puerto Rico, Habibe in October 2005 and Carreras in April 2006.[2] (Docket No. 45–2 at 2, ¶ 6; at 4, ¶ 6.) The Purchase Agreements state that "[a]ny disputes that develop under [them] will be settled according to Florida law." (Docket No. 38–2 at 11; Docket No. 38–3 at 11; see Docket No. 38 at 5, ¶ 9;

**1.** While each plaintiff attests that his purchase was initiated by a telephone call from Ranier, defendant has pointed to evidence telling a different story. According to the deposition of Lillybeth Rosario, Habibe first contacted her to inform her that he was interested in purchasing real estate in Miami. (Docket No. 45, ¶ 22; Docket No. 52–3 at 4–7.) Rosario states that she referred Habibe to Rainer. (Docket No. 52–3 at 7.) Then, according to Rainer's affidavit and deposition, Habibe traveled to Florida, where he signed a Reservation Agreement at ISG's MEI sales office for the purchase of the condominium. (Docket No. 38–4, ¶ 5; Docket No. 45–2 at 18.) Rainer states that Habibe indicated to her that Carreras was interested in purchasing a MEI condominium, and so she called Carreras, thus initiating the sale to Carreras. (Docket No. 38–4, ¶ 7.) Rosario states that Habibe referred his father to Rainer, and Habibe's father also signed a purchase agreement for a unit at the MEI. (Docket No. 52–3 at 7; Dock-

et No. 56–2; *see also* Docket No. 45–2 at 18–19 (Rainer discusses sale to Habibe's father).) *But see* Docket No. 38–4, ¶ 9 (Rainer denies awareness of MEI purchasers who reside in Puerto Rico apart from Habibe and Carreras). Rosario received referral fees from ISG for the sales to Habibe, Habibe's father, and Carreras. (No. 45–2 at 27–38; Docket No. 45–3 at 21–26; Docket No. 45–3 at 21–26; Docket No. 52–3 at 7.)

**2.** Rainer states in her affidavit that each plaintiff requested that she send his Purchase Agreement to Puerto Rico and that, after plaintiffs had signed their respective agreements, they returned the agreements to ISG in Florida. (Docket No. 38–4, ¶¶ 6, 7.) Plaintiffs' Purchase Agreements reveal that each plaintiff signed and dated his agreement on the same date that PMG countersigned his agreement. (Docket No. 38–2 at 15; Docket No. 38–3 at 15.)

Docket No. 45.) Plaintiffs allege that they tendered payments to PMG's escrow agent[3] and that they traveled on multiple occasions to Florida to inspect the condominium units, to negotiate terms after the execution of their respective Purchase Agreements, and to seek financing for the final payments. (Docket No. 4, ¶¶ 23, 24, 25, 40–45; *see* Docket No. 38 at 3; Docket No. 45; Docket No. 38–4, ¶ 8.)

The MEI was advertised in the Miami Herald and, according to the deposition of Ryan Shear, a junior developer at PMG, it may have been advertised in the New York Times and *American Way,* an American Airlines magazine allegedly made available in every American Airlines and American Eagle flight to and from Puerto Rico. (Docket No. 45–3 at 28–31; Docket No. 50–3 at 8, 17–21.) Shear also stated that the MEI may have been featured in *Caras,* a magazine allegedly published in Puerto Rico, in an article regarding the ten most luxurious properties in Miami, although Shear stated that the story was probably picked up unsolicited.[4] (Docket No. 45–3 at 32; Docket No. 50–3 at 3, 8, 18–19, 23; *see* Docket No. 45, ¶ 19.)

ISG sold three units in total to three Puerto Rico residents: Habibe, Carreras, and Habibe's father. (Docket No. 56–2 at 1–2.) Apart from the MEI sales, ISG has sold four other properties, all located outside of Puerto Rico, to Puerto Rico residents: one other property to Carreras, two other properties to Shimmy McHugh, and one property to a Puerto Rican celebrity whose name is not revealed in the record. (Docket No. 45–2 at 17–19.) Rainer has periodically called or emailed Rosario, Habibe, Carreras, McHugh, and the unnamed celebrity in Puerto Rico regarding other projects that ISG was marketing elsewhere in the world. (Docket No. 45–2 at 3, 5, 17–19; Docket No. 56–2 at 3–22; Docket No. 57–2.) In October 2007—that is, two years after Habibe signed his Purchase Agreement and one and a half years after Carreras signed his Purchase Agreement—Rainer traveled to Puerto Rico to make a marketing presentation at a San Juan hotel about properties in Panama and New Orleans, as well as the MEI, which was attended by Carreras, among others.[5] (Docket No. 45–2 at 2–3, 16, 25–26; Docket No. 56–2 at 23–39.) She returned to the island in December, 2007 on a trip related to Trump Puerto Rico, a golf club development project in Puerto Rico. (Docket No. 45–2 at 20–21.) On May 7, 2008, an entity designated ISG Realty, Sociedad en Comandita ("ISG, S. en C."), a Puerto Rico limited commercial partnership, entered into a Brokerage Agreement with a Puerto Rico corporation for the marketing and sale of properties at Trump Puerto Rico. (Docket No. 45–3 at 1–20; *see* Docket No. 52–5.) ISG's website provides information regarding Trump Puerto Rico, including a sales center address located in Puerto Rico. (Docket No. 45–3 at 38.)

---

**3.** Without evidentiary support, ISG states that the payments were held in Florida by the escrow agent, Chicago Title Insurance Company. (Docket No. 38 at 3, ¶ 7.) Plaintiffs have not disputed the location of the funds held in escrow. (*See* Docket No. 45.)

**4.** Plaintiffs' evidentiary proffer in support of defendants' efforts to advertise the MEI in print media consists entirely of Shear's deposition, which is ambiguous at best. Plaintiffs have not cited to copies of the actual adver-

tisements or articles referenced in their memorandum in opposition to defendant's motions. (Docket No. 45, ¶ 39.)

**5.** Rainer's affidavit contradicts Carreras's statement that the presentation involved the MEI: "Neither I nor anyone else acting on behalf of ISG ever traveled to Puerto Rico at any time to meet with Mr. Habibe, Mr. Carreras or anyone else in connection with the sale of condominium units at MEI." (Docket No. 38–4, ¶ 9.)

## C. Application of the Law

### 1. Specific Jurisdiction

 "There are two requirements for the proper exercise of specific in personam jurisdiction: (1) that the forum state have a long-arm statute that grants jurisdiction over defendant and (2) that the exercise of jurisdiction under that state statute does not exceed constitutional limits." *Perez Lang,* 522 F.Supp.2d at 359 (citing *Pritzker,* 42 F.3d at 60). Rule 4.7 of the Puerto Rico Rules of Civil Procedure contains Puerto Rico's long-arm statute. It provides in part as follows:

> (a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:
>
> > (1) Transacted business in Puerto Rico personally or through an agent; or
> >
> > (2) participated in tortious acts within Puerto Rico personally or through his agent[.]

P.R. Laws Ann. tit. 32, app. III, R. 4.7(a). Rule 4.7 extends "personal jurisdiction to the 'full extent of constitutional authority.'" *Perez Lang,* 522 F.Supp.2d 349, 358 (D.P.R.2007) (*quoting Pritzker,* 42 F.3d at 60; citing *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986)). "The exercise of *in personam* jurisdiction by courts in Puerto Rico is therefore 'limited only by the due process analysis of *International Shoe v. Washington, Office of Unemployment Compensation & Placement,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and succeeding cases.'" *Perez*

*Lang,* 522 F.Supp.2d at 358–59 (*quoting Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 668 (1st Cir.1980)). Thus, the court's task is to determine whether the exercise of jurisdiction over defendants falls within constitutional bounds. *See Mapfre P.R. v. Guadalupe–Delgado,* 608 F.Supp.2d 255, 259 n. 1 (D.P.R.2009) (citing *Hannon v. Beard,* 524 F.3d 275, 280 (1st Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 726, 172 L.Ed.2d 726 (2008)).

To determine whether plaintiff has shown facts sufficient to support a finding of specific jurisdiction, the First Circuit employs a three pronged analysis:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must ... be reasonable.

*Pritzker,* 42 F.3d at 60–61 (*quoting Pleasant St. I,* 960 F.2d at 1089); *see also Negron–Torres,* 478 F.3d at 24–25.

Plaintiffs' causes of action arise from the alleged marketing of MEI in Puerto Rico and the negotiations proceeding and following the execution of their agreements to purchase property from PMG. Because it is undisputed that ISG acted as PMG's agent throughout the process, ISG's contacts with the forum may be imputed to PMG for the purposes of specific jurisdiction analysis.[6]

---

**6.** Conversely, contacts which PMG may independently have with the forum which are related to the marketing of MEI may not be imputed to ISG. However, the only relevant contacts that PMG has with the forum which are not also ISG's contacts are the articles in *American Way* and *Caras,* and those articles, even when aggregated with IGS's contacts, are not sufficient to find specific jurisdiction

over PMG. There is no evidence that PMG solicited the feature in *Caras* so as to constitute purposeful availment, nor is there evidence that PMG specifically targeted Puerto Rico residents in its advertisement in *American Way. See Dalmau Rodriguez,* 781 F.2d 9 (advertisement in single magazine not sufficient to reasonably lead a manufacturer to

■ Under the first prong of the tripartite analysis, plaintiffs' claims are materially related to defendants' contacts with Puerto Rico. Although "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to [satisfy the relatedness prong]," *Phillips Exeter Academy v. Howard Phillips Fund,* 196 F.3d 284, 288 (1st Cir.1999) (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462 at 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)), plaintiffs' claims arise not precisely from the existence of the contractual relationship, but from the fact that defendants offered for sale and sold MEI properties in Puerto Rico. *See Phillips Exeter,* 196 F.3d at 290 ("[T]he relevant interactions between the parties and the proposed forum must be assayed in light of the nature of the plaintiffs' claim." (*citing Pleasant St. I,* 960 F.2d at 1089)). Indeed, two of plaintiffs' causes of action rest on the premise that Puerto Rico law requires contract nullification or rescission precisely because defendants engaged in the sale or offer for sale in Puerto Rico of properties located elsewhere—namely, in Florida. Plaintiffs' affidavits state that

Rainer placed sales calls to them in Puerto Rico to initiate the negotiations leading to the Purchase Agreements, and it is undisputed that plaintiffs, at least, signed the agreements in Puerto Rico. Although the precise chain of events leading to the MEI sales to plaintiffs is not clear from the record, plaintiffs have submitted affirmative proof that defendants offered for sale or sold Florida properties in Puerto Rico, allegedly bringing them within the ambit of Puerto Rico's laws imposing registration and reporting requirements on such sellers and requiring repayment of downpayments in certain circumstances.[7] *See* P.R. Laws Ann., tit. 20, §§ 3047, *et seq.*

Turning to the second prong, plaintiffs assert that defendants have purposefully availed themselves of the privilege of conducting business activities in Puerto Rico because defendants worked with Rosario as a co-broker in the MEI sales, called plaintiffs in Puerto Rico to offer to sell the MEI apartments, made other related phone calls to Puerto Rico, and sent the agreements to Puerto Rico for the plaintiffs to sign them.[8] Assuming these facts to be true, they do not constitute the level of purposeful availment required to find specific jurisdiction.[9]

believe it could be the basis for hailing it into court in Puerto Rico). Furthermore, even if the feature and advertisement were aimed at Puerto Rico, there is no suggestion that they led to the execution of the purchase agreements currently at issue. Indeed, the evidence suggests that the feature and advertisement were published after the agreements were executed. (Docket No. 45–3 at 28–32; Docket No. 50–3 at 3, 8, 18–19, 23.)

7. The court expresses no opinion at this juncture as to the merits of plaintiffs' alleged causes of action.

8. Plaintiffs allege that various other contacts support the exercise of specific jurisdiction over defendants, including ISG's alleged involvement with Trump Puerto Rico and the alleged systematic and periodic marketing in Puerto Rico of various real estate projects. (Docket No. 45 at 17–18.) However, the only

relevant contacts for the purpose of specific jurisdiction are those which relate to plaintiffs' causes of action. *See, e.g., Pleasant St. I,* 960 F.2d at 1088–89. The totality of defendants' respective contacts are analyzed below under the rubric applicable to the determination of general jurisdiction.

9. The chain of events leading plaintiffs to sign their Purchase Agreements is unclear. For example, although plaintiffs argue that ISG "retained" Rosario to act as a co-broker, plaintiffs do not assert what role Rosario played in the MEI sales or articulate how her relationship with ISG or PMG demonstrates purposeful availment. Defendants have pointed to evidence indicating that Rainer contacted Rosario, who then referred Habibe to Rainer, and that Habibe then referred Rainer to Carreras. However, plaintiffs claim that the purchase agreements originate from two phone calls unilaterally made by Rainer

For example, in *Trio Realty, Inc. v. Eldorado Homes, Inc.*, 350 F.Supp.2d 322 (D.P.R.2004), a Puerto Rico real estate broker brought a breach of contract action against a Florida construction company. Even though the alleged contract was to sell properties located in Florida, the court found that defendants had purposely established minimum contacts in Puerto Rico because the defendant corporation had a contractual or business relationship with plaintiff in Puerto Rico, it was reasonable to infer that the defendant corporation's president's visit to Puerto Rico was instrumental in the formation of that relationship, defendants placed 1,357 phone calls to Puerto Rico, the defendant corporation closed thirty-two real estate sales transactions with Puerto Rico clients procured by plaintiff, and a 10% sales commission was allegedly due to plaintiff in Puerto Rico. *Id.* at 331. In contrast, in the current case, no employee of ISG or PMG visited Puerto Rico in furtherance of the plaintiffs' Purchase Agreements, and the quantity of sales and telephone calls is significantly less than in *Trio Realty*.[10] More importantly, in the case at bar, although Rosario was paid a brokerage fee in Puerto Rico for plaintiffs' contracts and defendants made marketing calls to plaintiffs in Puerto Rico, the causes of action do not arise from the agreement between the broker and the seller, as in *Trio Realty*; they arise from two purchase agreements signed in Puerto Rico by Puerto Rican residents to buy Florida property from a Florida corporation, explicitly intended to be governed by Florida law, with payments due in Florida, which were frustrated due to plaintiffs' inability to obtain financing from Florida banking institutions. *See also Phillips Exeter*, 196 F.3d at 291 ("[C]ourts repeatedly have held that the location where payments are due under a contract is a meaningful datum for jurisdictional purposes.") (citing *Burger King*, 471 U.S. at 480, 105 S.Ct. 2174; *Ganis Corp. v. Jackson*, 822 F.2d 194, 198 (1st Cir.1987)).

Plaintiffs cite *Integrated Industries, Inc. v. Continental Milling Co. (Netherlands Antilles), N.V.*, 385 F.Supp. 883, 886 (1974) for the proposition that "negotiation and consummation of a single business transaction by mail has been found to be sufficient minimum contacts to establish [specific jurisdiction]." (Docket No. 45 at 16.) In *Integrated Industries*, a Puerto Rican corporation brought a breach of contract action against a defendant foreign corporation based on defendant's unilateral termination of an alleged contractual duty to ship ordered millfeed to Puerto Rico. *Id.* at 884. Among other things, the plaintiff had initiated the parties' contact, no representative of defendant had visited Puerto Rico but plaintiff had visited defendant, all orders placed by plaintiff were accepted by defendant in a foreign jurisdiction, delivery of merchandise was made F.O.B. point of shipment, and payment was made in a foreign jurisdiction. *Id.* Nevertheless,

to each of the plaintiffs in Puerto Rico. Plaintiffs may not simultaneously assert that Rosario's relationship with ISG represents purposeful availment and also that she played no integral part in the formation of plaintiffs' purchase agreements. Nevertheless, even accepting that ISG did have a brokerage agreement with Rosario and that Rainer initiated the contact with plaintiffs, these contacts are not sufficient to constitute purposeful availment.

10. Rainer traveled to Puerto Rico on behalf of ISG two times in 2007, once to give a presentation on properties including the MEI, and once on a trip related to Trump Puerto Rico when, according to Rainer's deposition, she was accompanied by ISG's president and director of sales. (Docket No. 45–2 at 2–3, 20–21, 25–26.) However, because these trips occurred significantly after the events giving rise to plaintiffs' complaint, they are irrelevant to the specific jurisdiction analysis.

the court found that defendant had exercised the privilege of conducting activities in Puerto Rico because of the type of business involved, shipment of goods to Puerto Rico. *Id.* at 885. Moreover, because such business does not require supervision or visits by the foreign corporation to the forum state, the lack of such contacts was not dispositive. *Id.* at 885. Finally, the court found that defendant had "actively pursued a course of conduct whose foreseeable consequence would be the cementing of a business arrangement from which it hoped to profit." *Id.* at 886. In the current case, although the facts suggest that defendants reached out in some manner to profit from a contractual relationship with two Puerto Rico residents, the type of business involved in the case at bar—sale of real estate in Florida—has a much more tenuous connection with Puerto Rico than the shipment of goods to Puerto Rico.

The fact that defendants made sales to plaintiffs in Puerto Rico—even if the sales were cultivated through a Puerto Rican broker, defendants deliberately sent the purchase agreement to be signed in Puerto Rico, and defendants made related phone calls to Puerto Rico—does not represent a purposeful effort to avail themselves of the Puerto Rico market. A " 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction,' " and "[i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174 (*quoting Hoopeston*

*Canning Co. v. Cullen,* 318 U.S. 313, 316–317, 63 S.Ct. 602, 87 L.Ed. 777 (1943)). The business transaction at issue was entirely centered in Florida and involved precious few proven communications which were deliberately directed towards Puerto Rico. Indeed, during the parties' course of dealing, plaintiffs traveled to Florida on multiple occasions, while no defendant ever traveled to Puerto Rico.[11] (Docket No. 38–4, ¶¶ 8–9; *see* Docket No. 45.) The fact that these two plaintiffs are Puerto Rico residents and must typically be contacted in Puerto Rico is incidental to the aim of the contract, which was to sell PMG's Florida properties. Defendants could not have reasonably anticipated the possibility of being subject to a lawsuit in Puerto Rico based on the circumstances surrounding the Purchase Agreements. *See Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (stating that the foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction); *compare Rodriguez v. Dixie Southern Indus., Inc.,* 113 F.Supp.2d 242, 253 (D.P.R.2000) (finding purposeful availment where defendant manufacturer had actual knowledge that its products would be purchased by plaintiff and brought to forum state) *with Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758 (9th Cir. 1990) (finding that Illinois seller of machine did not purposefully avail itself of Oregon forum based on suit brought by Oregon buyer to rescind sale of machine located in Illinois and sold "as is, where is," where seller's only contacts were response to buyer's solicitation for a filter, telephone conversations with buyer, mailing invoice to buyer, and receiving payment from buyer) *and Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.,* 16 Fed.Appx. 959, 963 (10th Cir.2001) (not

**11.** While there is evidence that defendants or their agents traveled to Puerto Rico, such travel was unrelated to the current cause of action. *See supra* note 10, at 10.

reported) (finding no purposeful availment where defendant entered into listing agreements with Colorado company and contacted Colorado company via telephone, fax, or email on at least sixty occasions, because "beyond the fortuitous fact that [Colorado company] was located in Colorado, Colorado had no specific relationship to the listing agreements or the process of locating a buyer for [defendant's subsidiary].") *and Inamar Inv., Inc. v. Lodge Props., Inc.,* 737 F.Supp. 12, 13–14 (D.P.R. 1990) (finding no purposeful availment by Colorado defendant in dispute regarding rental agreement of property in Colorado where defendant's only contacts with Puerto Rico were "1) the mailing of a contract to [plaintiff], a resident of the forum, 2) the mailing of numerous communications related to the contract to an address in Puerto Rico unilaterally designated by plaintiff, and 3) the mailing of at least six additional communications in response to contacts initiated by plaintiff"). Accordingly, defendants' contacts with the forum are insufficient to support plaintiffs' assertion of specific jurisdiction.

**2. General Jurisdiction**

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Pleasant St. I,* 960 F.2d at 1089 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 & n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "The standard for evaluating whether [a defen-

dant's] contacts satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions." *Noonan v. Winston Co.,* 135 F.3d 85, 93 (1st Cir.1998) (*quoting Glater v. Eli Lilly & Co.,* 744 F.2d 213, 216 (1st Cir.1984)). This court may assert general jurisdiction over defendants if they have engaged in the "continuous and systematic pursuit of general business activities in [Puerto Rico]." *Perez Lang,* 522 F.Supp.2d at 360 (*citing Glater,* 744 F.2d at 216).

As to PMG, the only alleged or proven contact with Puerto Rico consists of the sale of three MEI properties in Florida to three individuals in Puerto Rico, through its agent ISG, and the feature in *Caras* and advertisement in *American Way.*[12] These contacts are clearly insufficient to merit the exercise of general jurisdiction. *See, e.g., Glater,* 744 F.2d 213 (manufacturer who advertised, employed eight sales representatives to distribute product information, and sold products to multiple distributors in the forum state was not subject to personal jurisdiction); *Dalmau Rodriguez,* 781 F.2d 9 (advertisement in single magazine not sufficient to support minimum contacts).

As to ISG, plaintiffs' argument in favor of the exercise general jurisdiction principally rests on the assertions that ISG has a broker relationship with Rosario and that ISG markets and sells properties to Puerto Rico residents. However, ISG's relationship with Rosario is attenuated at best. Though Rosario herself acknowledged that the only commissions she has ever received from ISG were attendant to

---

**12.** For the purposes of evaluating general jurisdiction, the court considers defendant's contacts up until the filing of the complaint. *Harlow v. Children's Hosp.,* 432 F.3d 50, 64–65 (1st Cir.2005) (*citing Noonan,* 135 F.3d at 93 n. 8; *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 410–11, 104 S.Ct. 1868.) However, while ISG's contacts with Puerto

Rico were also PMG's contacts for the purpose of the specific jurisdiction analysis, ISG's contacts with Puerto Rico which are unrelated to the Purchase Agreements giving rise to plaintiffs' complaint cannot be attributed to PMG in the general jurisdiction context.

the three MEI sales, plaintiffs cite to Rainer's deposition statement that Rosario received referral fees for three additional sales. (Docket Nos. 45–2 at 18–19; Docket No. 52–3 at 8; *see* Docket No. 45–3 at 21–26.) Ranier and Rosario both characterize Rosario's relationship with ISG as that of a client. (Docket No. 45–2 at 18; Docket No. 52–3 at 8.) At best, the evidence shows that Rosario has referred five clients to ISG, with the last client's purchase agreement dating from 2006. (Docket No. 45–2 at 2, 17–19.) Apart from ISG's relationship with Rosario, ISG's other marketing and sales in Puerto Rico consist of two visits by Ranier in 2007, one of which also involved ISG's president and director of sales, according to Ranier's deposition; an unspecified number of emails or phone calls to six Puerto Rico residents, including Rosario; and seven ISG sales to five Puerto Rico residents. Even assuming that Rosario is a broker with an ongoing relationship with ISG, the business she generates and the evidence of other ISG marketing and sales efforts in Puerto Rico do not suffice to show "continuous and systematic pursuit of general business activities" in Puerto Rico. *See Glater,* 744 F.2d 213; *cf. Trio Realty,* 350 F.Supp.2d 322.

Plaintiffs also assert that ISG has continuous and systematic contacts in Puerto Rico because ISG's website includes information regarding Trump Puerto Rico and directs website visitors to a sales office located in Puerto Rico and because ISG, S. en C. has a brokerage agreement to sell Trump Puerto Rico properties. However, ISG has pointed to evidence that the entity marketing the Trump Puerto Rico development and operating the office in Puerto Rico is ISG, S. en C., a different business entity than ISG, the defendant in this case. (Docket No. 45–3 at 1–20; Docket No. 52–2 at 2; Docket No. 52–5.) Even assuming—as suggested by their association on ISG's website and the fact that an ISG officer is a partner of ISG S. en C.—that the two entities are a part of the same corporate family, one entity's acts and contacts do not transfer another for the purposes of personal jurisdiction. (Docket No. 45–3 at 33–41; Docket No. 52–2 at 2; Docket No. 52–5;) *cf. Velazquez v. P.D.I. Enters., Inc.,* 141 F.Supp.2d 189, 193 (D.P.R.1999) ("A plaintiff who asks a court to disregard independent corporate structures by piercing a subsidiary's 'corporate veil' faces a high burden of proof. The concept of limited liability is so basic a principle of corporate law that courts are hesitant to disregard the independent corporate structure as between a parent corporation and its corporate subsidiaries.") (citing *Schaefer v. Cybergraphic Sys., Inc.,* 886 F.Supp. 921, 925 (D.Mass.1994)); *Escude Cruz v. Ortho Pharm. Corp.,* 619 F.2d 902, 905–06 (1st Cir.1980) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary." (citations omitted)) Plaintiffs have not presented any evidence of the relationship between ISG and ISG S. en C. apart from printouts of ISG webpages which refer to Trump Puerto Rico. This evidence is insufficient to attribute ISG S. en C.'s contacts with Puerto Rico to ISG, and the assertion that ISG is in fact the entity involved in the Trump Puerto Rico sales is entirely conclusory. *See Noonan,* 135 F.3d at 94 (1st Cir.1998). Therefore, plaintiff has not demonstrated that general jurisdiction exists over ISG.

Plaintiff has failed to make out a *prima facie* case of either specific or general personal jurisdiction over either defendant. Therefore, the court need not address the issue of venue.

## III. CONCLUSION

For the reasons stated above, it is recommended that defendants' motions to dismiss (Docket Nos. 37, 38) be GRANTED.

IT IS SO RECOMMENDED.

The parties have five (5) calendar days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *See Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *see also* Fed.R.Civ.P. 72(b).

In San Juan, Puerto Rico, this 13th day of September, 2010.